[No. S062379. Aug. 5, 1999.)

THE PEOPLE, Plaintiff and Respondent, v.
TERRY EUGENE BIRKETT, Defendant and Appellant.

## Counsel

Patricia J. Ulibarri, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Janelle Boustany and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Preston, Steffen, Katzen, Gallagher & MacMorris and David Hewes Bent for California State Automobile Association Inter-Insurance Bureau as Amicus Curiae on behalf of Plaintiff and Respondent.

## Opinion

**BAXTER, J.**—Proposition 8 states the People of California's "unequivocal intention" that "all persons who suffer losses as a result of criminal activity shall have the *right* to restitution" from the convicted criminals. (Cal. Const., art. I, § 28, subd. (b) (article I, section 28(b)), italics added.) This measure requires restitution, absent compelling and extraordinary contrary reasons, whenever "a *crime victim* suffers a loss" (*ibid.*, italics added), and it calls for implementing legislation (*ibid.*). The Legislature has enacted, and frequently amended, a bewildering array of responsive statutes. The narrow questions here arise under the statutory scheme as in effect in November 1994.[1] The issues are (1) whether the 1994 laws governing mandatory restitution as a condition of adult probation gave insurers a *right* to restitution insofar as they had reimbursed their insureds for crime-related losses, and (2) if not, whether trial courts nonetheless had *discretion* to allocate mandatory probationary restitution awards between insurers and insureds to reflect such reimbursements.

---

[1]But see footnote 21, *post*. Any subsequent references to the 1994 laws, statutes, or scheme are to the laws in effect in November 1994.

We conclude that the 1994 laws gave only "direct [crime] victim[s]" a right to restitution from adult probationers, and insurers did not become such "direct victim[s]" by reimbursing crime losses under the terms of their policies. Moreover, while trial courts retained considerable discretion to order nonstatutory restitution as a condition of probation, they could not divert mandatory restitutionary awards from insureds to insurers, because the 1994 scheme gave "direct victim[s]" a right to restitution based on the *full amount* of their losses, without regard to full or partial recoupments from other sources except the Restitution Fund. We further determine that the scheme, as so limited, did not violate Proposition 8.

The Court of Appeal thus erred by upholding a trial court order which split a mandatory probationary restitution award for the full amount of certain "direct victim[s]' " losses between the victims themselves and the insurers who had partially reimbursed them. Accordingly, we will reverse the judgment of the Court of Appeal, with directions to remand the matter to the trial court for further proceedings consistent with our opinion.

## FACTS

On November 17, 1994, Steven Lang, a Murietta police officer, stopped Shirley Birkett, who was driving a tan Toyota truck with a cracked windshield. Lang knew Shirley from previous contacts and told her he had heard there was a stolen car at the residence she shared with defendant, Terry Eugene Birkett, who was her husband. With Shirley's permission, Lang accompanied her to the property and searched it.

The search, and other investigation, revealed several stolen vehicles, and parts of vehicles, on the Birketts' property. Defendant told investigators he had switched the vehicle identification numbers (VIN's) on at least two vehicles, including the tan Toyota truck.

An information charged defendant with one count of owning and operating a "chop shop" (Veh. Code, § 10801), one count of tampering with a VIN (*id.*, § 10802), one count of receiving stolen property (Pen. Code, § 496), and one count of auto theft (Veh. Code, § 10851). Pursuant to a plea bargain, defendant pled guilty to the chop shop and auto theft counts. He agreed to pay restitution to victims Woodward, Shafer, Lanting, and Simpson, in amounts to be determined. In return, the remaining counts were dismissed, and petitioner received felony probation with the condition, among others, that he serve one year in county jail.

At a restitution hearing, the court took evidence about the amounts of the victims' vehicle losses. The evidence disclosed, among other things, that

Woodward and Lanting had been partially reimbursed by insurance. Therefore, the court also entertained argument and briefing on whether the restitution scheme authorized awards to the reimbursing insurers.

The court ultimately ruled that under the law applicable to petitioner's crimes, the insurance carriers were *entitled* to restitution. Accordingly, in its restitution order, the court awarded $800 to Woodward, $3,642.53 to Woodward's automobile insurer, Allstate Insurance Company (Allstate), $250 to Lanting, and $3,095.42 to Lanting's automobile insurer, National General Insurance Company (National General).

In a published opinion, the Court of Appeal, Fourth Appellate District, Division Two, affirmed. The Court of Appeal reasoned, in essence, that restitution to insurers was authorized because, by reimbursing their policyholders, the carriers became subrogated to the policyholders' rights of recovery against third parties. By thus stepping into the shoes of their insureds who had suffered losses as the direct result of crime, the Court of Appeal concluded, the insurers themselves assumed the status of direct victims entitled to restitution under the 1994 statutes. In reaching this result, the Court of Appeal expressly disagreed with *People* v. *Sexton* (1995) 33 Cal.App.4th 64 [39 Cal.Rptr.2d 242] (*Sexton*), the only other then published decision to address the effect of the 1994 amendments on insurers' entitlement to restitution.

We granted review. We now reverse.

## DISCUSSION

On June 8, 1982, Proposition 8 was enacted by the voters. It added new article I, section 28(b) to the California Constitution. Article I, section 28(b) directed the Legislature to adopt, within one calendar year, laws implementing the "right" of "all persons who suffer losses as a result of criminal activity" to receive "restitution from the persons convicted of the crimes," and ensuring that "[r]estitution shall be ordered" from convicted criminals "in every case . . . in which a crime victim suffers a loss" unless "compelling and extraordinary reasons" weigh against restitution. The Legislature enacted responsive legislation in 1983, and has amended it frequently thereafter.

In November 1994, when defendant committed his crimes, *mandatory* restitution *as a condition of adult probation* was governed by former section

1203.04 of the Penal Code, as then recently amended.[2] In general, this statute required such restitution from the probationer to the victims of his crimes. (Pen. Code, former § 1203.04, subds. (a)(2)(A), (d), (e).) Among other things, it declared that "[n]othing in this section shall prevent a court from ordering restitution to any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity *when that entity is a direct victim of a crime.*" (*Id.*, subd. (j), italics added.)

■ Defendant and the People appear to agree that by reason of this latter subdivision, insurers were entitled to restitution from a probationer only as "direct victim[s]" of the probationer's crimes. Defendant contends, however, that an insurer who merely satisfied the contractual obligation to reimburse the crime-related losses of its policyholder was not such a "direct victim."

On the other hand, the People and their amicus curiae[3] advance the Court of Appeal's premise that an insurer became a "direct victim" by reimbursing its policyholder for a covered loss, because by right of subrogation, the insurer thus assumed the insured's direct rights against the criminal who caused the loss. In our view, both the plain language of former section 1203.04 of the Penal Code, and its legislative history, belie the People's argument.

■ In ascertaining the Legislature's intent, we turn first to the language of the statute, giving the words their ordinary meaning. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134] (*Broussard*); *People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].) We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended. (*Broussard, supra,* at pp. 1071-1072; *People* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) If our examination of the statutory language leaves doubt about its meaning, we

[2]This amendment was adopted by Statutes 1994, chapter 1106, section 4, effective as an urgency measure on September 28, 1994. (Stats. 1994, ch. 1106, § 9; see Cal. Const., art. IV, § 8, subd. (c)(3).) All subsequent quotations from former section 1203.04 of the Penal Code, as in effect on November 17, 1994, are from section 4 of chapter 1106 of the 1994 Statutes. In 1995, former section 1203.04 of the Penal Code was repealed. (Stats. 1995, ch. 313, § 8.) The subject matter of the repealed section was incorporated into Penal Code section 1202.4. (Stats. 1995, ch. 313, § 5.)

[3]An amicus curiae brief in support of the People was filed by the California State Automobile Association Inter-Insurance Bureau. On the other hand, Allstate and National General, the insurers directly concerned in this case, have not appeared or participated at any stage.

may consult other evidence of the Legislature's intent, such as the history and background of the measure. (*Delaney* v. *Baker* (1999) 20 Cal.4th 23, 29-30 [82 Cal.Rptr.2d 610, 971 P.2d 986]; *Watts* v. *Crawford* (1995) 10 Cal.4th 743, 751 [42 Cal.Rptr.2d 81, 896 P.2d 807].)

■ The plain language of former section 1203.04 of the Penal Code, as effective in November 1994, confirms defendant's view that the statute did not give insurers a right to restitution of amounts paid to reimburse the crime-related losses of their policyholders. With one anomalous exception, the 1994 section uniformly spoke of restitution to "victim[s]" of crime. (Pen. Code, former § 1203.04, subd. (a)(1) [Legislature's intent that "victim of crime" receive direct restitution for crime-related economic loss] & (2)(A) [probationer shall make restitution "[t]o the victim, if the crime involved a victim"], subd. (d)(3) [restitution shall include "[w]ages or profits lost due to injury incurred by the victim"] & (4) [restitution shall include "[w]ages or profits lost by the victim"], and subd. (e) [restitution order shall not affect "right of a victim to recovery" from Restitution Fund except to "extent restitution is actually collected pursuant to" order]; but see *id.*, subd. (d) [restitution shall be in amount sufficient to reimburse "all persons"[4] for economic losses incurred "as the result" of probationer's criminal conduct].) As we had previously noted in the context of the restitution statutes, "[a] 'victim' is a 'person who is the *object* of a crime . . . .'" (*People* v. *Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80] (*Crow*), quoting Black's Law Dict. (5th ed. 1979) p. 1405, col. 2, italics added.)

Additional provisions in the 1994 statute made even clearer that "victim[s]" entitled to restitution were limited to those persons or entities *against which* the probationer's crimes had been committed. While the section neither offered nor referred to a single definition of "victim," it did specify that " '[v]ictim' shall include the immediate surviving family of the *actual victim*."[5] (Pen. Code, former § 1203.04, subd. (h)(2), italics added.) Most pertinent here, the section stated that it did not preclude business and government entities from receiving restitution "when [they were] *direct victim*[*s*] of a crime." (*Id.*, subd. (j), italics added.)[6]

---

[4]As discussed in detail hereafter (see fn. 16, *post*), this latter reference to "all persons," as opposed to the "victim" terminology used elsewhere in the statute, appears to be the result of drafting oversight during the process leading to the final 1994 bill amending former section 1203.04 of the Penal Code.

[5]"Actual" means "[e]xisting in . . . fact; . . . real," as opposed to "potential, possible, virtual, theoretical, [or] ideal." (1 Oxford English Dict. (2d ed. 1989) p. 132, 3d definition, italics omitted.)

[6]"Direct" means "straightforward, uninterrupted, [or] immediate" in time, order or succession, or "proceeding [in logic] from antecedent to consequent, from cause to effect, etc.,

The 1994 statutory language thus created the inescapable inference that while the right to restitution was not confined to individual persons, entitlement arose only in favor of "actual" or "direct" victims—i.e., the real and immediate objects of the probationer's offenses—and their close family survivors. Insurance companies that suffered the consequences of crime only by reimbursing the crime-related losses of their policyholders did not reasonably fit within this definition.

On its face, the 1994 statutory scheme also strongly implied that private insurers could not *assume* an "actual" or "direct" victim's rights of restitution from the probationer to the extent the insurer had reimbursed the victim for losses. The scheme generally called for restitution by the probationer "directly" to the victims of his crimes (Pen. Code, former § 1203.04, subd. (a)(1)) and provided that such restitution should be "full" (*id.*, subd. (d)), that is, "of a dollar amount . . . sufficient to *fully* reimburse [the victim] for all determined economic losses incurred as the result of the [probationer's] criminal conduct" (*ibid.*, italics added).

Moreover, while the 1994 scheme contained no express provision whatever for the rights of private insurers, it did provide at length for those of the Restitution Fund (hereafter sometimes the Fund). Thus, former section 1203.04 of the Penal Code set forth only one exception to the general rule of "full" restitution "directly" from the probationer to the victim: payments must go *not* to the victim, *but to the Fund*, "to the extent the victim has received assistance [from the Fund]." (*Id.*, subd. (a)(2)(A).)

Government Code section 13966.01, added in 1993,[7] further explicitly established that "[t]he State of California shall be *subrogated* to the rights of the victim to whom cash payments [from the Fund] are granted to the extent of the cash payments granted. The subrogation rights shall be against the perpetrator of the crime or any person liable for the pecuniary loss." (Gov. Code, § 13966.01, subd. (a), italics added.) As adopted in 1993, Government Code section 13966.01 also entitles the state to a "lien on the . . . award . . . in the amount of the cash payments on any recovery made by or on behalf of the victim." (*Id.*, subd. (b).)

---

uninterrupted," or generally "[e]ffected or existing without intermediation or intervening agency; immediate." (4 Oxford English Dict., (2d ed. 1989), p. 702, 4th, 6th definitions.) In legal contexts, "direct" similarly stands for "[i]mmediate; proximate; by the shortest course; without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of indirect." (Black's Law Dict. (6th ed. 1990) p. 459, italics omitted.)

[7]Government Code section 13966.01 was added by Statutes 1993, chapter 295, section 4. All further citations to Government Code section 13966.01, as in effect in November 1994, are derived from that source. The section was subsequently amended in 1995, 1996, and 1998. (Stats. 1995, ch. 313, § 1; Stats. 1996, ch. 1077, § 6; Stats. 1998, ch. 451, § 1.)

These provisions demonstrate that the Legislature well knew how to provide for recoupment and subrogation rights of third party payors in the context of the restitution scheme. By specifying subrogation and lien rights for the Restitution Fund, but setting forth no similar rights for private insurers, the 1994 scheme indicated that in the latter instance, no such rights were intended.

Nor does our reading of the 1994 scheme's literal language produce an implausible result, one the Legislature could not have meant to reach. The Legislature could reasonably focus the criminal restitution scheme on the interests of the immediate victims, on the rehabilitative effects of forcing a perpetrator to face the direct consequences of his acts, and on the fiscal integrity of the state fund established to assist crime victims, rather than on complicated civil liability issues better resolved in other arenas.

We therefore conclude that by its plain terms, the 1994 mandatory restitution scheme excluded reimbursing insurers, claiming in that capacity, as "direct victim[s]" entitled to restitution from an adult probationer. But even if the 1994 statutes were ambiguous on their face, their background and history would lead us to the same result. We explore this complex background and history in some detail.

The statutes governing adult probation have long called for the probationer's restitution to the victims of his crimes. In 1994, as now, section 1203.1 of the Penal Code declared that, when granting probation to an adult offender, the court "shall provide for restitution in proper cases" and "shall consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund." (*Id.*, subds. (a)(3), (b).)[8] Then, as now, Penal Code section 1203.1 did not define "victim." Before its 1994 amendment, former section 1203.04 of the Penal Code, as amended in 1992, also set forth a general requirement that an adult probationer must pay restitution to "the victim, if the crime involved a victim," and otherwise to the Restitution Fund. (*Id.*, subd. (a)(1).)[9] At this time, as since its 1983 enactment, former section 1203.04 of the Penal Code also did not define

---

[8]The last pre-1994 amendments to Penal Code section 1203.1 were effected by Statutes 1993, chapter 605, section 11.5. Citations to the immediate pre-1994 version of Penal Code section 1203.1 are derived from that source. However, Penal Code section 1203.1 had called on trial courts to *consider* reparation or restitution as a condition of probation at least since the section's adoption in 1935 (see Stats. 1935, ch. 604, § 2, p. 1708), and the *requirement* that restitution be imposed "in proper cases" was added in 1982 (see Stats. 1982, ch. 1413, § 6, pp. 5403-5404).

[9]Before the 1994 amendments, which cast former section 1203.04 of the Penal Code in the form applicable to defendant's crimes, the section had last been amended by Statutes 1992, chapter 682, section 5, pages 2923-2924. All subsequent references to this section in its most recent *pre-1994* guise, and specifically as amended in 1992, are from that source.

"victim," except to note that " 'victim' shall include the immediate surviving family of the actual victim in homicide cases." (Pen. Code, former § 1203.04, subd. (a)(1), as amended by Stats. 1992, ch. 682, § 5, p. 2923; see also Stats. 1983, ch. 568, § 2, p. 2434.)

The statutes also gave trial courts broad general discretion to fashion and impose conditions of probation appropriate to individual cases. Before 1994, as now, Penal Code section 1203.1 authorized the court to impose "other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (*Id.*, former subd. (*i*), see now subd. (j).)[10] Both before and after its 1994 amendment, former section 1203.04 of the Penal Code provided that "[n]othing in this section shall be construed to limit the authority of the court to . . . provide conditions of probation." (*Id.*, subds. (f) [1992 amend.], (g) [1994 amend.].)[11]

Case law accordingly concluded that the court, when imposing conditions of probation, could require the probationer to do acts not otherwise mandated by law, if such conditions were "reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] (*Lent*).) In particular, "California courts [had] long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation" even under circumstances not strictly governed by Proposition 8 and the restitution statutes. (*People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67] [holding probationer convicted of hit-and-run could be ordered to pay vehicle damage not caused by criminal act of leaving scene of accident]; see also, e.g., *Lent*, *supra*, 15 Cal.3d at pp. 486-487 [restitution for conduct resulting in acquittal]; *People* v. *Goulart* (1990) 224 Cal.App.3d 71, 79 [273 Cal.Rptr. 477] [restitution for conduct underlying uncharged and dismissed counts]; *People* v. *Miller* (1967) 256 Cal.App.2d 348, 355-356 [64 Cal.Rptr. 20] [restitution for related conduct not resulting in conviction]; see also *In re Brian S.* (1982) 130 Cal.App.3d 523, 528-532, 534, fn. 4 [181 Cal.Rptr. 778] [no requirement that probationary restitution reflect exact amount of loss, or of permissible recovery in civil action].)

Meanwhile, a separate scheme had arisen for mandatory restitution in nonprobationary cases. In 1965, the Legislature added former section 11211

---

[10]This language had appeared in Penal Code section 1203.1 since its enactment in 1935. (Stats. 1935, ch. 604, § 2, p. 1708.)

[11]This language had appeared in Penal Code former section 1203.04 since its enactment in 1983. (Stats. 1983, ch. 568, § 2, p. 2435.)

to the Welfare and Institutions Code, calling for need-based state assistance to the victims of violent crimes and their families, and for fines payable by convicted violent criminals to the state's indemnity fund. (Stats. 1965, ch. 1549, § 2, pp. 3641-3642.) In 1967, former section 11211 of the Welfare and Institutions Code was repealed, and its subject matter, under the title "Victims of Crime," was addressed in new chapter 5 of part 4 of division 3 of title 2 of the Government Code (former § 13960 et seq.). (Stats. 1967, ch. 1546, §§ 1, 2, pp. 3707-3709.) In 1969, when a new article 2 was added to chapter 5, Government Code former section 13960 et seq. was redesignated as article 1 of chapter 5 (hereafter article 1). (Stats. 1969, ch. 1111, § 2, p. 2167; Stats. 1969, ch. 1431, § 2, p. 2936.)

Article 1 was substantially revised in 1973 to include Government Code sections 13959 through 13969. (Stats. 1973, ch. 1144, §§ 1, 2, pp. 2348-2352.) As pertinent here, the convoluted subsequent history of these provisions is well summarized in *Broussard, supra,* 5 Cal.4th 1067: "As revised, the statutory scheme provided, among other things, for financial assistance from the restitution fund for medical expenses and lost wages to victims of violent crimes, with a maximum of $10,000 in each category. ([Gov. Code,] § 13965.) A new statute, [Government Code] section 13967, authorized a court-ordered fine of up to $10,000, to be paid into the restitution fund by any criminal defendant convicted of a violent crime that caused injury or death to the victim. The Legislature placed all of the provisions controlling the creation and administration of the restitution fund in article 1. Because the fund provided compensation only to victims of *violent* crimes, section 13960 defined the term 'victim,' for purposes of article 1, as one injured as a direct result of a violent crime." (*Broussard, supra,* 5 Cal.4th at p. 1072, original italics.)[12]

In 1983, the Legislature enacted various provisions to implement Proposition 8's call for mandatory restitution from persons convicted of crimes to their victims. (*Broussard, supra,* 5 Cal.4th 1067, 1073.) These provisions

---

[12]As enacted in 1973, Government Code section 13960 defined a victim as "(1) [a] person who sustains *physical injury or death* as a *direct result* of a *crime of violence*; [¶] (2) [a]nyone legally dependent for his support upon a person who sustains [such injury]; and [¶] (3) [i]n the event of a death caused by a crime of violence, any individual who legally assumes the obligation, or who voluntarily pays the medical or burial expenses incurred as a direct result thereof." (*Id.,* former subd. (a), italics added, as enacted by Stats. 1973, ch. 1144, § 2, p. 2348.) Frequent amendments expanded and altered this definition between 1973 and 1994. However, Government Code section 13960 retained the fundamental concept that "victim[s]" were persons (limited in later years to California residents and members of military families stationed in California) injured or killed by violent crime, plus other persons in specified family, household, or financial relationships to those injured or killed. (See, e.g., Stats. 1994, ch. 1242, § 1; Stats. 1994, ch. 146, § 70; Stats. 1993, ch. 780, § 1; Stats. 1985, ch. 1130, §§ 3-6, pp. 3830-3836.)

included former section 1203.04 of the Penal Code, which established a mandatory restitution scheme for adult probationers. (*Broussard, supra,* at p. 1073.) However, the Legislature failed to adopt provisions for mandatory restitution from adult offenders who were *denied* probation. (*Ibid.*) The lapse was noted in a Court of Appeal opinion, *People* v. *Downing* (1985) 174 Cal.App.3d 667, 672 [220 Cal.Rptr. 225]. (*Broussard, supra,* 5 Cal.4th at pp. 1073-1074.)

"To remedy this legislative oversight, Senator Gary Hart in 1986 proposed to add a new statute, Penal Code section 1202b, that would require trial courts to order restitution 'to the victim' (if the crime had a victim) in 'any case where a person is convicted of a crime and probation is denied.' (Sen. Bill No. 2404 (1985-1986 Reg. Sess. . . .).) Because the new statute was to be in the Penal Code, it would be unaffected by the definition of the term 'victim' in article 1 [of] the Government Code . . . ." (*Broussard, supra,* 5 Cal.4th 1067, 1074.)

However, after passage in the Senate, Senate Bill No. 2404 "was changed [in the Assembly] to provide for an amendment to section 13967 of the Government Code, rather than an addition of a new statute to the Penal Code, as originally contemplated." (*Broussard, supra,* 5 Cal.4th 1067, 1074, fn. omitted.) Among other things, Senate Bill No. 2404, as finally adopted (see Stats. 1986, ch. 1438, § 1, pp. 5140-5141), added new subdivision (c) to Government Code section 13967, stating that when " 'a *victim* has suffered *economic* loss as a result of the defendant's criminal conduct, and the defendant is denied probation, . . . the court shall order restitution to be paid to the *victim.*' " (*Broussard, supra,* 5 Cal.4th at p. 1074, quoting subdivision (c) of Government Code section 13967, as added by Sen. Bill. No. 2404, first and third italics added.)[13] Because new section 13967, subdivision (c) appeared in article 1 of the Government Code and contained no separate definition of the "[v]ictim[s]" it covered, the question arose whether the new statute required nonprobationary offenders to pay restitution only to "[v]ictim[s]" as defined for purposes of article 1 by Government Code section 13960.

The different treatments of the term "victim" in the schemes for probationary and nonprobationary restitution did not go unnoticed in the pre-1994 cases. A number of pre-1994 decisions addressed whether each of these schemes required or authorized restitution by the offender to indirect victims, i.e., persons or entities that had sustained economic consequences only

---

[13]Though subdivision (c) of Government Code section 13967 was amended several times between 1986 and 1994, no change was made in the above-quoted language. (See Stats. 1988, ch. 975, § 1, p. 3152; Stats. 1989, ch. 712, § 1, p. 2342; Stats. 1990, ch. 45, § 2, p. 257; Stats. 1991, ch. 657, § 1, p. 3020; Stats. 1992, ch. 682, § 4, p. 2923.)

as a result of crimes committed against others. The results generally depended on whether the probationary or the nonprobationary scheme was at issue.

On the one hand, pre-1994 cases noting the Government Code's restrictive definition of "victim" held that indirect victims were not entitled to restitution from convicted persons *who were denied probation.* (E.g., *People* v. *Franco* (1993) 19 Cal.App.4th 175, 178-185 [23 Cal.Rptr.2d 475] [city not entitled, under either Proposition 8 or Government Code, to resitution from nonprobationary offender for workers' compensation benefits paid to employee injured by crime]; *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141] [reimbursing insurer was not "victim" entitled to nonprobationary restitution under Government Code]; *People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1523-1524 [255 Cal.Rptr. 778] [same].)

On the other hand, cases considering restitution *as a condition of probation* generally concluded that restitution to persons or entities other than a "direct" victim was authorized. (E.g., *People* v. *Foster* (1993) 14 Cal.App.4th 939, 948-954 [18 Cal.Rptr.2d 1] [restitution to reimbursing insurer proper as condition of probation; distinction between probationary and nonprobationary schemes noted]; *People* v. *Narron* (1987) 192 Cal.App.3d 724, 732-733 [237 Cal.Rptr. 693] [county forced to clean up illegal drug laboratory could be "victim" for purposes of drug offender's restitutionary probation condition (dictum)]; *People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 572-573 [193 Cal.Rptr. 394] [under Penal Code section 1203.1, conditions of probation may include restitution to reimbursing insurer]; *People* v. *Clark* (1982) 130 Cal.App.3d 371, 384-387 [181 Cal.Rptr. 682] [under Penal Code section 1203.1, order for restitution to victim's children was proper condition of probation]; *People* v. *Alexander* (1960) 182 Cal.App.2d 281, 292-293 [6 Cal.Rptr. 153] [order for reparation to insurers who reimbursed fire losses was proper condition of probation for convicted arsonist].)

Two 1993 decisions of this court created additional uncertainty on these issues. In *Broussard, supra,* 5 Cal.4th 1067, we held that the "victim[s]" entitled to restitution from a nonprobationary offender under Government Code section 13967, subdivision (c), as then in effect, were not limited by Government Code section 13960 to those persons *injured or killed* as a direct result of a crime, but included those who had suffered mere "economic loss." (*Broussard, supra,* at p. 1075.)

*Broussard* reasoned as follows: By its plain terms, subdivision (c) of Government Code section 13967 required restitution by a nonprobationary offender "to any 'victim' who 'has suffered economic loss as a result of the

defendant's criminal conduct . . . .' " (*Broussard, supra,* 5 Cal.4th 1067, 1070, fn. omitted.) Moreover, subdivision (c) was added to Government Code section 13967 in 1986 as a specific response to Proposition 8's mandate that *all* "crime victim[s]" receive restitution for their "losses" from the persons convicted (art. I, § 28(b)). (*Broussard, supra,* at pp. 1073-1074.) The immediate purpose of the 1986 statute was to impose on *nonprobationary* offenders restitutionary requirements similar to those already provided for probationers. (*Ibid.*) For unknown reasons, the 1986 law, originally slated for the Penal Code, was ultimately placed in article 1 of the Government Code, which included section 13960 and otherwise dealt only with the narrower right to assistance from the Restitution Fund. (*Broussard, supra,* at p. 1074.) Under these circumstances, it would be "absurd" to conclude the Legislature ignored Proposition 8's imperative by granting nonprobationary restitution only to those "victims" narrowly defined for purposes of the Restitution Fund by Government Code section 13960. (*Broussard, supra,* 5 Cal.4th at pp. 1072; see also *id.,* at pp. 1075-1077.)

Soon after *Broussard* was decided, we held in *Crow, supra,* 6 Cal.4th 952, that the "victim[s]" entitled to nonprobationary restitution under subdivision (c) of section 13967, as then in effect, were not limited to natural persons, but included a *government agency* directly defrauded of welfare benefits. *Crow* first noted that the ordinary meaning of "victim" includes any person " 'who is the object of a crime . . . .' " (*Crow, supra,* at p. 957, quoting Black's Law Dict., *supra,* p. 1405.) *Crow* also rejected the defendant's contention that a government agency could not be a "victim" as defined by Government Code section 13960, because the agency was not a " 'resident of California.' " (*Crow, supra,* at pp. 959-960.) Like *Broussard, supra, Crow* reasoned that the Legislature could not have intended, in subdivision (c) of Government Code section 13967, to create dissimilar schemes for probationary and nonprobationary restitution, or to withhold restitutionary rights from victims otherwise covered by Proposition 8. (*Crow, supra,* at pp. 958-960.) While briefly noting the division of authority that had arisen about whether " 'indirect victims' " could receive restitution, *Crow* expressly left that issue open. (*Id.,* at p. 958, fn. 4.)

Finally, a 1994 published Court of Appeal decision, *People* v. *Severns* (*Severns*), held, contrary to the prior line of authority, that the pre-1994 version of former Penal Code section 1203.04 did not authorize restitution to an indirect victim as a condition of probation. We granted review of *Severns* on July 1, 1994. We also granted review in *People* v. *Martinez* (Cal.App.) (*Martinez*), an unpublished decision which had concluded that probationers could be required to reimburse indirect victims. (Review granted June 30, 1994.)

Thereafter during 1994, we granted and held for *Severns* and *Martinez* a number of other cases, published and unpublished, that addressed whether both probationary and nonprobationary restitution could be extended to indirect victims. (*People* v. *Perry* (Cal.App.) (review granted July 21, 1994); *People* v. *Loftis* (Cal.App.) (review granted August 11, 1994); *People* v. *Passons* (Cal.App.) (review granted August 11, 1994); *People* v. *Sargent* (Cal.App.) (review granted September 8, 1994); *People* v. *Jimenez* (Cal.App.) (review granted November 3, 1994); *People* v. *Adams* (Cal.App.) (review granted December 15, 1994).)[14]

On February 23, 1994, Assembly Member Hoge introduced Assembly Bill No. 3169 (1993-1994 Reg. Sess.) (Assembly Bill No. 3169), which, as ultimately enacted (Stats. 1994, ch. 1106), established the law of adult probationary restitution in effect on November 17, 1994. As applicable to adult offenders, Assembly Bill No. 3169 proposed, among other things, to remove the provisions for nonprobationary restitution from Government Code section 13967, to address that subject by amendments to section 1202.4 of the Penal Code, and also to amend the provisions for probationary restitution already set forth in former section 1203.04 of the Penal Code. (Assem. Bill No. 3169, *supra*, §§ 1-3.)[15]

In its original form, Assembly Bill No. 3169 would, among other things, have altered both the probationary and nonprobationary schemes to remove all references to "victim[s]" entitled to restititution from the convicted person, and instead to provide for mandatory restitution to *"every person who incurred any economic loss as a result of the defendant's criminal conduct."* (*Id.*, §§ 2, 3, italics added.) For purposes of *nonprobationary* restitution, the original bill also provided simply that "person" for restitutionary purposes "means any individual, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." (*Id.*, § 2.)

Assembly Bill No. 3169 was amended in the Assembly on April 4, 1994. Among other things, this amendment added to both section 1202.4 and former section 1203.04 of the Penal Code a statement of legislative intent "that a *victim of crime* who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant

---

[14]In February 1995, after adoption by the Legislature of 1994 amendments to the restitutionary scheme as discussed at length below, we dismissed review in *Severns, Martinez,* and all the other above-listed cases as improvidently granted. (Cal. Rules of Court, rule 29.4(c).)

[15]Both as originally introduced and as finally adopted, Assembly Bill No. 3169 also amended the Welfare and Institutions Code to provide parallel restitutionary requirements for juvenile offenders. (See text & fn. 16, *post.*)

convicted of that crime." (Assem. Bill No. 3169, §§ 2, 3, as amended Apr. 4, 1994, italics added.)

Consistent with this statement, the April 4, 1994, amendment began a general retreat from the original bill's expansive references to "every person" entitled to restitution by substituting, at a number of places, variations on the narrower term "victim." (Assem. Bill No. 3169, §§ 2, 3 as amended Apr. 4, 1994.) The April 4, 1994, amendment further proposed to add to former section 1203.04 of the Penal Code a provision that " '[p]erson who incurred any economic loss as a result of the defendant's criminal conduct' shall include the immediate surviving family of the *actual victim*." (Assem. Bill No. 3169, § 3, as amended Apr. 4, 1994, italics added.)

Finally, the April 4, 1994, amendment reworded the "business and government entity" provision, to be included in *both* section 1202.4 and former section 1203.04 of the Penal Code. The new language provided that "[n]othing in this section shall *prevent* a court from ordering restitution [to a business or government entity] when that entity is a *direct victim* of a crime." (Assem. Bill No. 3169, §§ 2, 3, as amended Apr. 4, 1994, italics added.) This provision, as attached to both Penal Code sections, remained in the bill as finally adopted.

A subsequent Assembly amendment on May 2, 1994, and a Senate amendment on May 31, 1994, further recast Assembly Bill No. 3169. Among other things, these amendments largely completed the process of substituting "victim[s]" for "person[s]" in the bill's various references to restitutionary entitlement. With minor exceptions having no apparent significance, the bill as finally enacted consistently referred to "victim[s]" of crime, not to "person[s]" who incurred economic loss as a result of crime, when providing for mandatory restitution by an adjudicated adult or juvenile offender.[16]

By amending Assembly Bill No. 3169 to specify that entitlement to restitution was not limited to individuals, but was nonetheless confined to

---

[16]When enacted as chapter 1106 of the 1994 Statutes, Assembly Bill No. 3169 retained only four inconsistent references to "person[s]" rather than "victim[s]" as the object of mandatory restitution. In essence, the bill provided similar mandatory restitution requirements for five classes of persons: nonprobationary adult offenders (Pen. Code, § 1202.4), probationary adult offenders (*id.*, former § 1203.04), probationary juvenile offenders (Welf. & Inst. Code, former § 729.6), juvenile offenders committed to the California Youth Authority (*id.*, former § 731.1), and other juvenile offenders (*id.*, § 730.6). In each of these categories, the amount of restitution ordered was generally to be "of a dollar amount sufficient to fully reimburse" the losses subject to restitution.

As originally introduced, Assembly Bill No. 3169, consistent with its other provisions at that time, had variously defined this "dollar amount," for each class of covered offenders, as the amount sufficient to fully reimburse "every person" or "all persons" for all economic loss resulting from the offender's criminal conduct. (*Id.*, §§ 2-5.) The Assembly amendment of

"actual" and "direct" "victim[s]" rather than all "person[s]" who had incurred crime-related losses, the 1994 Legislature clearly sought to resolve the uncertainties on these issues which had been identified in the recent case law. In this context, the final bill's particular admonition that restitution to artificial entities was not precluded *when they were "direct victim[s]"* of the offender's crimes appears calculated to make clear that such entities were not entitled to restitution for indirect economic losses, such as reimbursements by insurers to their policyholders.

This was the conclusion reached by the first case to consider Assembly Bill No. 3169 after the bill's adoption. In *Sexton, supra*, 33 Cal.App.4th 64, 70, the Court of Appeal held that Assembly Bill No. 3169 had resolved the controversy over "whether a sentencing court can order the defendant to pay restitution to a victim's insurer." The *Sexton* court reasoned that by providing for restitution to business entities as " 'direct' victims," Assembly Bill No. 3169 was referring only to direct "object[s]" of the offender's crimes (citing *Crow, supra*, 6 Cal.4th 952, 957) and "necessarily intended to exclude entities which are 'indirect' victims from such authorization." (33 Cal.App.4th at p. 71.) "[A]n insurer who has incurred expenses solely by virtue of a contractual duty to indemnify the direct victim is not itself an 'object' of the crime and hence not a direct victim. [The insurer] cannot, therefore, be the recipient of a [Penal Code] section 1203.04 [probationary] restitution order unless it is itself a direct victim of criminal conduct." (*Ibid.*)

The parties debate at length the policies for and against a rule that insurers, having reimbursed their policyholders, should be considered "direct" restitutionary "victim[s]" by right of subrogation. Defendant urges that an insurer claiming in this capacity is no "victim" with a crime-related loss, because its business is to accept the calculated risk that the premiums it charges will more than cover its contractual obligation to pay its policyholders' covered losses. Defendant further argues that criminal courts are not civil collection agencies, and that a restitution proceeding is not an appropriate forum for resolving complex subrogation issues between two nonparties, the immediate victim and the victim's insurer.

The People and their amicus curiae respond that insurers suffer loss if denied restitution because premiums are computed on the basis of an insurer's right to recover from culpable third parties. It is also asserted that

May 2, 1994, in the course of making other changes from "person" to "victim" throughout the bill, altered this "dollar amount" definition for purposes of *nonprobationary adult offenders* by substituting "the victim or victims" for "every person" in proposed new subdivision (g) of Penal Code section 1202.4. (Assem. Bill No. 3169, § 3, as amended May 2, 1994.) Although this and a subsequent amendment to Assembly Bill No. 3169 otherwise finished the job of shifting the bill's focus from "person[s]" to "victim[s]" (see text discussion, *ante*), the language of the "dollar amount" definitions applicable to the remaining four classes of offenders was never changed. Under the circumstances, this anomaly appears to be the result of drafting oversight.

judicial resources are conserved, not wasted, by allocating criminal restitutionary awards directly to all who incurred economic harm from the defendant's crime.

As indicated above, however, both the plain language and the extensive background and history of the relevant statutes persuade us that the policy choice the *Legislature* made in 1994 was to grant only "direct" crime victims and their immediate families a right to restitution from adult probationers, and otherwise to foreclose such entitlement by persons whose losses arose only as a result of crimes committed against others. Beyond concluding that this statutory result is rational and constitutional, we need not resolve the policy issues raised by the parties.

We have already explained that our construction of the 1994 restitution scheme produces no absurd result. Nor does there appear any violation of Proposition 8. Nothing in the language or history of the initiative measure compels the conclusion that persons other than the real, actual, immediate, and direct victims of crime have a constitutional right to restitution from the offenders.

Proposition 8 states on the one hand that "all persons who suffer losses as a result of criminal activity" shall have such a right, but provides on the other that restitution shall be ordered whenever a "crime victim" suffers such a loss. (Art. I, § 28(b).) Both the generality and the inconsistency of these constitutional phrases preclude any determination that indirect victims such as reimbursing insurers are included within their plain meaning.

When an initiative measure's language is ambiguous, we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *Legislature* v. *Eu* (1991) 54 Cal.3d 492, 504 [286 Cal.Rptr. 283, 816 P.2d 1309].) These provide no indication that in adopting Proposition 8's restitutionary provisions, the electorate was concerned with anything other than victims as ordinarily understood, i.e., those against whom crimes had been committed.

The Official Title and Summary for Proposition 8 simply stated that the measure "[i]ncludes provisions regarding restitution to *victims* from persons convicted of crimes." (Atty. Gen., Official Title and Summary, Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982) p. 32, italics added.) In similar fashion, the Legislative Analyst explained that while current law did not automatically entitle *crime victims* to restitution, Proposition 8 "would grant *crime victims* who suffer

losses a constitutional right to receive restitution" and would generally require convicted persons "to make restitution to all of their *victims* who suffer losses." (Legis. Analyst, Analysis of Prop. 8, Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, *supra*, at p. 32, italics added.)

The ballot arguments for and against the measure scarcely mentioned restitution. Proponents argued that Proposition 8, in all its aspects, was a necessary means of curbing crime, particularly violent crime, and of restoring balance between the rights of criminals and victims. (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982) argument in favor of Prop. 8, at p. 34.) Opponents responded that Proposition 8 was radical and would undermine better considered reforms already in place. (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, *supra*, argument against Prop. 8, at p. 35.) On the issue of restitution, the opponents urged only that the proposed new right to restitution was "meaningless" because "so many *victims* are harmed by criminals who can't pay," and "*victims* already have the right to collect from criminals who can pay." (*Ibid.*, italics added.)

Insofar as the voters focused on restitution when adopting Proposition 8, it thus seems clear they were concerned with the straightforward principle that those who had suffered loss from crimes committed against them should have the right to reparation from the crimes' perpetrators. Nothing indicates the electorate intended to encompass each and every economic consequence that might incidentally be incurred by persons or entities far removed from the crime itself.

■ Finally, it is well settled that when the Legislature is charged with implementing an unclear constitutional provision, the Legislature's interpretation of the measure deserves great deference. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281]; *California Housing Finance Agency* v. *Patitucci* (1978) 22 Cal.3d 171, 175 [148 Cal.Rptr. 875, 583 P.2d 729]; cf. *Amwest Surety Ins. Co.* v. *Wilson* (1995) 11 Cal.4th 1243, 1253 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) ■ In adopting the 1994 mandatory restitution scheme, including the 1994 version of former section 1203.04 of the Penal Code, the Legislature made clear that it intended, "as provided in this act," to "secure[]" the right to restitution guaranteed by article I, section 28(b) of the California Constitution. (Stats. 1994, ch. 1106, § 1, subds. (a), (d).) In limiting this right to "direct victim[s]" of crime, the Legislature adopted a plausible interpetation of the constitutional provision. We should accept its determination.

We therefore hold that under the 1994 version of former section 1203.04 of the Penal Code, as contained in Assembly Bill No. 3169, an insurer did not become a "direct victim" of crime, and thus entitled to restitution from the adult probationary offender, by paying the crime-related losses of its insured under the terms of an insurance policy.

But we do not complete our task by deciding that restitution to private insurers is not *required* by the statutory scheme. The question remains whether the instant trial court, in fashioning its mandatory probation order, was nonetheless *permitted* to divide, between each immediate victim and his insurer, a single award for the full net amount of the damage or loss caused to that victim by defendant's criminal conduct. For several reasons, we conclude the court could not exercise its discretion in this manner.

We first note the 1994 language of Penal Code former section 1203.04, subdivision (j), as added by Assembly Bill No. 3169, that "[n]othing in this section shall *prevent* a court from ordering restitution [to a business or government entity] when that entity is a *direct victim* of a crime." (Italics added.) Though former section 1203.04 of the Penal Code also declared that "[n]othing in this section shall be construed to limit the authority of the court to . . . provide conditions of probation" (*id.*, subd. (g)), the implication of subdivision (j) was that the section *did* "prevent" a court from including "indirect" victims in a mandatory restitution order.

But our conclusion has deeper roots in the 1994 statutory scheme for mandatory restitution by adult probationers. As amended by Assembly Bill No. 3169, former section 1203.04 of the Penal Code made clear that, with one exception not applicable here, the *immediate victim* of the probationer's crime was entitled to receive restitution "directly" from the probationer for the *full amount* of the loss caused by the probationer's criminal conduct.

Thus, in the statute's 1994 version, Penal Code section 1203.04, subdivision (a)(1) declared that "[i]t is the intent of the Legislature that a victim of crime who incurs any economic loss *as a result of the commission of a crime* shall receive restitution *directly from any defendant convicted of that crime.*" (Italics added.)[17] Subdivision (a)(2)(A) directed the court to require, as a condition of probation, that the probationer make restitution "[t]o the victim," except that "[p]ayments shall be made to the Restitution Fund to the extent the victim has received assistance" from the Fund. Subdivision (d) provided that the restitution ordered shall be "in the amount of the losses, as

---

[17]This reference to "direct[]" restitution from the probationer to the victim was added by the April 4, 1994, Assembly amendment to Assembly Bill No. 3169. (Assem. Bill No. 3169, § 3, as amended Apr. 4, 1994.)

determined," that "[t]he court shall order *full restitution*" except in unusual cases, and that "[r]estitution shall, to the extent possible, be of a dollar amount that is sufficient to *fully reimburse* all persons, for all determined economic losses incurred *as the result of the defendant's criminal conduct* . . . ." (Italics added.)[18] The losses subject to restitution included "(1) [f]ull or partial payment for the value of stolen or damaged property[,] . . . [¶] (2) [m]edical expenses[,] [¶] (3) [w]ages or profits lost due to injury incurred by the victim, . . . [and] [¶] (4) [w]ages or profits lost . . . due to time spent as a witness or in assisting the police or prosecution." (Pen. Code, former § 1203.04, subd. (d).) These provisions were adopted in furtherance of the Legislature's findings, among others, that "[r]estitution is recognized to have a rehabilitative effect on criminals" and "as a deterrent to future criminality." (Stats. 1994, ch. 1106, § 1.)

It appears clear from this language that the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged,* regardless of that victim's reimbursement from other sources. Only the Restitution Fund was eligible to receive any part of the full restitutionary amount otherwise due to the immediate victim.

Thus, except as against the Restitution Fund, the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. Third parties other than the Fund, such as private insurers, who had already reimbursed the victim were thus left to their separate civil remedies, if any, to recover any such prior indemnification either from the victim or from the probationer. (See *Sexton, supra,* 33 Cal.App.4th 64, 71-72; Pen. Code, former § 1203.04, subds. (a)(2)(A), (e); cf. *People* v. *Dalvito* (1997) 56 Cal.App.4th 557, 560-562 [65 Cal.Rptr.2d 679].)

Again, this result is neither absurd nor contrary to Proposition 8. As noted above, the Legislature could rationally conclude that the criminal restitution scheme should always require the offender to pay the full cost of his crime, receiving no windfall from the fortuity that the victim was otherwise reimbursed, but that the rights of reimbursing third parties, aside from the state's own Restitution Fund, should be resolved in other contexts. Article I, section 28(b) does not suggest otherwise. The constitutional provision simply assures the rights of immediate *victims* of crime to receive restitution *from the*

---

[18]As noted above (see *ante,* fn. 16), this reference to "all persons" rather than "victims" appears to be a drafting oversight, and does not suggest that "full" restitution awards were to be allocated among persons other than the immediate victims.

*offenders* "in every case." (*Ibid.*) Nothing in the constitutional language states or implies that such restitutionary awards may be diverted to satisfy the claims of third parties.[19]

The probationary order in this case thus violated the principles of the constitutionally valid statutory scheme. While the order correctly required defendant to make restitution of the full amount of the losses determined to have been caused by the crimes to which he pled guilty,[20] the order incorrectly diverted portions of this restitutionary award from the immediate victims to their reimbursing insurers, thus leaving the immediate victims with less than "full" restitution without regard to private insurance. The 1994 statutes precluded that result.[21]

---

[19]There is no great novelty in the notion that a person injured or damaged by the wrongful conduct of another may obtain full recovery from the wrongdoer even after partial or full reimbursement from an independent source. Indeed, in tort law, California adheres to the collateral source doctrine, which precludes the fact or amount of the victim's insurance recovery from reducing his recovery in tort. (*Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9-10 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398].) As we have explained in that setting, the tortfeasor should receive no windfall because the victim had the thrift and prescience to purchase insurance, and the investment represented by the victim's payment of insurance premiums would earn no benefit if they served to mitigate his tort damages. (*Id.*, at p. 10.) The victim obtains no double recovery to the extent his contractual arrangement with his insurer calls for subrogation or refund of insurance benefits in light of a recovery in tort. (*Id.*, at p. 11.) That a tort victim's insurer typically can assert such rights in the tort lawsuit itself (*ibid.*) does not mean the Legislature *must* so provide in the context of criminal restitution.

[20]While defendant correctly argues that the instant restitution award should have gone solely to the immediate victims, without diversion to their insurers, he does not contend that the overall *amount* of the award was excessive, and that the court should or could have ordered him to pay, in total, only the *difference* between the full amount of the losses he caused and the amounts reimbursed by insurance. Both defendant's briefs and his counsel's oral argument appear to have conceded that the 1994 scheme required *full* reparation by an offender *to the true victim*, if any, regardless of private insurance. To the extent *Sexton, supra,* 33 Cal.App.4th 64, implies that a probationary court had discretion under the 1994 scheme to award less than full restitution to a victim already reimbursed by insurance (see *id.*, at pp. 71-72), that decision is disapproved.

[21]Defendant's crimes occurred in November 1994, but he entered his guilty plea in December 1995, and the restitution hearings and order took place in February and March 1996. At these latter times, 1995 urgency amendments to the restitutionary scheme were in effect. (Stats. 1995, ch. 313, eff. Aug. 3, 1995.) The scheme was again amended in 1996, 1997, and 1998. The parties, like the Court of Appeal, focus on the 1995 and current versions of the scheme. However, the several post-1994 amendments do not significantly alter our analysis. If anything, they further clarify the Legislature's intent to preclude private insurers from using criminal restitution proceedings to recoup amounts paid to cover their policyholders' crime-related losses.

As noted above, the 1995 Legislature repealed former section 1203.04 of the Penal Code, dealing with adult probationary restitution, and amended Penal Code section 1202.4 to create a uniform restitutionary scheme for all adult offenders. (Stats. 1995, ch. 313, §§ 5, 8.) Under the unified 1995 scheme, as before, a "victim" of crime was to receive "full" restitution

CONCLUSION

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to remand the matter to the trial court for further proceedings consistent with the views expressed in this opinion.

George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

"directly" from the offender. (Pen. Code, § 1202.4, former subds. (a)(1), (g), as amended by Stats. 1995, ch. 313, § 5.) The Restitution Fund retained express subrogation and lien rights against the victim's restitutionary recovery. (Gov. Code, § 13966.01, as amended by Stats. 1995, ch. 313, § 1; Pen. Code, § 1202.4, former subd. (f), as amended by Stats. 1995, ch. 313, § 5.) However, the 1995 reorganization added to Penal Code section 1202.4 an important proviso, still substantially contained in current law, that the "amount of restitution ordered . . . *shall not [otherwise] be affected by the indemnification or subrogation rights of third parties*." (Pen. Code, § 1202.4, former subd. (g), as amended by Stats. 1995, ch. 313, § 5, italics added; see now Pen. Code, § 1202.4, subd. (f)(2); see also fn. 2, *ante*.) The 1995 legislation eliminated any reference to losses suffered by "persons;" restitution was uniformly defined as an amount sufficient to reimburse the "victim or victims." (Pen. Code, § 1202.4, former subd. (g), as amended by Stats. 1995, ch. 313, § 5.) Finally, the 1995 legislation retained the proviso that the statutory scheme did not "prevent" restitution to an artificial entity which was a "direct victim" of crime. (Pen. Code, § 1202.4, former subd. (p); Stats. 1995, ch. 313, § 5.)

A Court of Appeal decision interpreting the 1995 scheme has held that it did not entitle a sheriff's department to restitution from a drug offender of amounts paid by undercover agents to buy drugs from the offender. The Court of Appeal reasoned that the police do not suffer losses as "direct victim[s]" of crime by spending money to achieve their mission of combatting crime. (*People* v. *Torres* (1997) 59 Cal.App.4th 1, 2-5 [68 Cal.Rptr.2d 644].)

1996 legislation recast Penal Code section 1202.4 in substantially its current form. Though reorganized and augmented, the 1996 version retained the concept that crime "victim[s]" should receive "full" restitution "directly" from the offender, without regard to the rights of third parties except the Restitution Fund. (Pen. Code, § 1202.4, subds. (a)(1), (f)-(o), as added or amended by Stats. 1996, ch. 629, § 3.) The 1996 changes omitted prior language that the statute did not "prevent" restitution to artificial entities as "direct victim[s]." Such entities were treated together with "immediate surviv[ors]" in amended subdivision (k) of the section, which now provided that "[f]or purposes of [Penal Code section 1202.4], 'victim' shall *include* the immediate surviving family of the *actual victim*" and "shall also *include*" an artificial entity "when that entity is a *direct victim* of a crime." (Pen. Code, § 1202.4, subd. (k), as amended by Stats. 1996, ch. 629, § 3, italics added.) Nothing suggests this semantic change was intended to widen the circumstances in which insurers, claiming as such, could obtain criminal restitution for amounts paid to their victimized policyholders.

The 1997 and 1998 amendments made no changes pertinent to our analysis.