Filed 8/25/25  P. v. Singletary CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RALPH SINGLETARY,<br><br>Defendant and Appellant. | A170711<br><br>(San Francisco City & County<br>Super. Ct. No. 23014758) |

Defendant Ralph Singletary appeals from the victim restitution order imposed after he pled guilty to evading an officer against traffic (Veh. Code, § 2800.4).  We affirm.

## I.  BACKGROUND

In September 2023, police officers saw a Dodge Charger which had been reported stolen and was involved in a robbery.  They conducted surveillance on the vehicle and coordinated a plan to apprehend it.  Eventually, after leading law enforcement on a pursuit and while on the freeway, the Charger crashed into a sheriff's department vehicle.  Singletary and two other occupants exited the Charger and were apprehended.[1]

---

[1] We take the facts of the offense from the police incident report as summarized in the probation report.  At the change of plea hearing, counsel

Singletary was charged with seven offenses, including evading an officer against traffic (Veh. Code, § 2800.4; count VI). He pled guilty to count VI. The plea agreement included, among other things, that Singletary pay restitution to the victim. The trial court sentenced Singletary to two years in prison and continued the matter for a restitution hearing.

The Charger's owner (victim) submitted a restitution claim to the probation department. According to the probation report, the victim requested $7,162.81 in restitution, comprised of $6,000 for vehicle repairs, $1,000 for personal property which had been in the vehicle, and $162.81 in rideshare costs. The victim advised the probation department that his vehicle was totaled and, at that time, he had not received payment from his insurance company. By the time of the restitution hearing, the victim's insurance company had paid him $12,812.25.

The trial court held the victim restitution hearing over two days in April and May 2024. The prosecutor presented a victim restitution report and explained that the victim was requesting $7,162 for his vehicle which was damaged in the police chase. According to the prosecutor's and defense counsel's representations of receipts included with the restitution report, the receipts demonstrated: the victim had spent $6,000 on vehicle repairs in August 2023 (prior to Singletary's offense in September 2023); and the victim's insurance company paid him $12,812.25 in October 2023.[2] Defense

stipulated that the factual basis for Singletary's plea was reflected in the incident report.

[2] The victim restitution report, including the two pages of receipts, is not a part of the record on appeal. However, this does not affect our review because the information which appears to have been provided in the receipts—the victim spent $6,000 in repair costs the month before Singletary's offense and the victim's insurance company subsequently paid him $12,812.25—is not contested.

counsel argued that because the victim's insurer had paid him more than the cost of the prior repairs, the victim was "asking for a windfall" and, therefore, there should be no restitution at all. The prosecutor argued that despite the victim receiving payment from his insurer, Singletary still owed restitution. The court explained that its understanding of the law was that if the victim's "insurance pays him, [Singletary] does not get credit for that."

At the continued hearing in May 2024, the prosecutor and defense counsel argued further regarding the victim's repair costs. The trial court determined Singletary had not carried his burden to show the restitution claim was not valid. The court stated restitution was "not a windfall for the victim." The court explained the repairs were the type of repairs the victim intended for the vehicle to be long lasting. The court ordered Singletary to pay the victim $7,162.81 in restitution.

## II. DISCUSSION

Singletary challenges the $6,000 portion of the restitution order the victim claimed for the cost of vehicle repairs made prior to Singletary's offense.

Under the California Constitution, any person who suffers loss from criminal activity is entitled to restitution from the person convicted of the crime which caused their loss. (Cal. Const., art. I, § 28(b)(13); see also Pen. Code,[3] § 1202.4, subd. (a)(1).) Section 1202.4 provides that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) Such restitution "shall be of a dollar amount

---

[3] Undesignated statutory references are to the Penal Code.

3

that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.*, subd. (f)(3).) The value of damaged property "shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (*Id.*, subd. (f)(3)(A).) "In addition to compensating victims, the restitution mandate serves rehabilitative and deterrent purposes." (*People v. Hume* (2011) 196 Cal.App.4th 990, 995.)

In *People v. Birkett* (1999) 21 Cal.4th 226 (*Birkett*), our Supreme Court explained that an offender must "make full restitution for all losses his crime had caused, and that such reparation should go entirely to the individual . . . the offender had directly wronged, regardless of that victim's reimbursement from other sources." (*Id.* at p. 246, italics omitted.) Therefore, the court determined "the immediate victim was entitled to receive from the [offender] the full amount of the loss caused by the crime, *regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses.* Third parties other than the [state restitution fund], such as private insurers, who had already reimbursed the victim[,] were thus left to their separate civil remedies, if any, to recover any such prior indemnification either from the victim or from the [offender]." (*Ibid.*, italics added.)

At a restitution hearing, the "burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) The victim must establish the amount of restitution by a preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) The "trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or

4

damaged property." (*Id.* at p. 1543; see also *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 ["A victim's statement of economic loss is prima facie evidence of loss."].) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Gemelli*, at p. 1543.)

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious." (*People v. Gemelli, supra,* 161 Cal.App.4th at p. 1542.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*Ibid.*) A victim's right to restitution is to be " 'broadly and liberally construed.' " (*People v. Stanley* (2012) 54 Cal.4th 734, 737.)

Singletary argues that because the victim's insurer paid him $12,812.25 due to the vehicle being totaled, the victim had "already been compensated for" the $6,000 he spent on repairs prior to the offense. Singletary's argument ignores settled law that a defendant must make full restitution for all losses his crime caused, "regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses." (*Birkett, supra,* 21 Cal.App.4th at p. 246.) This principle has been followed in subsequent cases where the victim's third party insurer compensated its insured for economic losses attributed to criminal conduct. (See *People v. Hamilton* (2003) 114 Cal.App.4th 932, 939–941; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272–1273; see also *People v. Hume, supra,* 196 Cal.App.4th at p. 1000 [applying principle in case where victims had been reimbursed from a third party fund].) The fortuity that the victim was covered by his own insurance does not shield Singletary from a restitution order. (See *Birkett*, at p. 246;

*Hove*, at p. 1272.) That there is potential for the victim to receive a windfall if, for example, he does not have to reimburse his insurance company "does not diminish the victim's right to receive restitution of the full amount of economic loss caused by the perpetrator's offense." (*People v. Duong* (2010) 180 Cal.App.4th 1533, 1537–1538.)[4]

We reject Singletary's assertion that the restitution order compensated the victim for the preoffense repair costs "in addition to" the market value of the vehicle. (Capitalization and italics omitted.) The value of damaged property "shall be the replacement cost of like property, *or* the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A), italics added.) Relying on this provision, Singletary suggests that the trial court awarded restitution based on both methods. Not so. The victim's car was totaled, meaning the cost to repair it exceeded the predamage fair market value. (See Veh. Code, § 544; *Martinez v. Enterprise Rent-A-Car Co.* (2004) 119 Cal.App.4th 46, 55.) Singletary asserts that the amount the victim's insurance company deemed the fair market value necessarily included compensation for the repairs the victim made prior to the offense. Assuming that is correct, it does not follow that the restitution order paid the victim "an additional $6,000," as Singletary asserts. The victim suffered the loss of his vehicle, which included the benefit of having spent $6,000 on repairs described by the trial court as being intended to make the vehicle long lasting. The victim was entitled to the replacement cost of like property, which, presumably, would take into consideration the costs the victim

---

[4] Despite the prosecutor citing *Birkett*, *supra*, 21 Cal.4th 226, at the restitution hearing and the People citing it in their respondent's brief, in his appellate briefs Singletary does not cite *Birkett* or any other authority regarding restitution principles when a victim has received payment from a third party.

incurred in repairing his vehicle before the crime. The trial court did *not*, in fact, award the victim *both* the fair market value of the car *and* the cost to repair the car. Singletary's position conflates the insurance payment with the restitution payment, but they are distinct. Restitution must cover the full amount of the loss caused by the crime, paying no regard to any insurance payment the victim received. (See *Birkett*, *supra*, 21 Cal.4th at p. 246.) If the court had ordered restitution of $18,812.25 ($12,812.25 fair market value plus $6,000 in preoffense repair costs), our analysis might be different. But that is not the issue presented here.

While the victim requested $6,000 for preoffense repair costs, he could have requested, and would have been entitled to, the cost to replace his car in its preoffense condition—an amount the insurance company valued at nearly $13,000. (See § 1202.4, subd. (f)(3)(A).) Section 1202.4, subdivision (f) requires that restitution be "based on the amount of loss claimed by the victim . . . or any other showing to the court," and here the victim requested less than the full value of his loss. The trial court ordered restitution in the amount of the victim's claim, "and [Singletary] has not shown that this amount exceeds that which [the victim] was eligible to receive. Accordingly, we have not been persuaded that the trial court abused its discretion." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 667.)

### III.   DISPOSITION

The restitution order is affirmed.

LANGHORNE WILSON, J.


WE CONCUR:


BANKE, ACTING P.J.

SMILEY, J.


A170711
*People v. Singletary*