[Crim. No. 29974. Second Dist., Div. Five. Nov. 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE HARRISON LEWIS III, Defendant and Appellant.

514

**COUNSEL**

J. Patrick Maginnis for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

KAUS, P. J.—A jury convicted defendant of rape, assault with intent to commit rape and assault with a deadly weapon. The court imposed consecutive prison sentences on all three counts.

### Facts

Patrick and Nadezhda D. lived in room 231 of the Mark Twain Hotel at 1622 North Wilcox in Hollywood. Mrs. D. was 65 years old; she was suffering from Huntington's Chorea, a movement disorder that prevented her from controlling twitching bodily movements. On November 7, 1975, her condition was such that she could not talk comprehensibly, feed herself, or get out of bed.

Her physician observed that besides her inability to control her limbs, Mrs. D. was disoriented as to time and situations, uncooperative and capable of verbalizing her thoughts only to a limited extent. The physician testified that it was "unlikely" that she would understand the idea of sexual intercourse, but he could not say for sure.

On November 7 at about 8 p.m., Patrick went across the hall to the room of a friend, Mr. Solomon. His wife was in bed with the lights and television on. Patrick left the door slightly ajar. After a few minutes, he heard his wife screaming. He rushed back to his room and saw a man on top of her. The man had his trousers down and was making a movement "that you would go through when you're making love to a woman." Patrick identified the man as defendant.

When Patrick came into the room, defendant jumped off the victim and started to pull his pants up. Patrick rushed at defendant but was unable to hold him because defendant was much bigger than Patrick, who was 55 years old, about five feet two inches tall and weighed 105 pounds. Patrick chased defendant downstairs and out of the hotel. Defendant jumped into a car. When Patrick was unable to get into the car he jumped on the front of it and held onto the windshield wipers in spread-eagle fashion. Defendant then drove up Wilcox to Hollywood Boulevard where he stopped. He jumped out of the car, pushed Patrick, and got back into the car. Patrick jumped back on the car which took off again. Defendant drove down Hollywood to Vine Street, made a right turn, drove up the street and stopped again. Defendant then got out and

the two men fought. Defendant took a piece of wood, which appeared to be a small baseball bat, from the car and hit Patrick over the head with it. Patrick was stunned; defendant jumped into the car and drove off.

When Mrs. D. screamed, Thomas Solomon also ran into the room. He saw defendant there. Solomon was unable to chase him because he has a heart condition.[1] Mr. Patel, the owner of the hotel, gave Solomon a piece of paper with a license number of the vehicle on it. Solomon gave the paper to the police officer.

Another resident, Malcolm Marihugh, was in the lobby of the hotel when he observed Patrick on the hood of an automobile, motioning frantically for help. Marihugh saw the automobile take off with Patrick on top of it and stop at Wilcox and Hollywood. He ran out of the hotel and followed the car. He saw Patrick arguing with a black man. Marihugh grabbed the black man's arm and tried to arrest him. He called to passersby to call a policeman. He then went to look at the license number and the man took off in the car with Patrick still on the hood. Marihugh remembered that the license number was something to the effect of RLR 523. He could not identify defendant at trial.

Two police officers went to the Mark Twain Hotel at about 8 p.m. One officer briefly interviewed Mr. and Mrs. D. He heard Mrs. D. say, "He asked me for a cigarette, he raped me." The other officer obtained a description of the suspect and of the vehicle and a license number, RSR 523. The suspect was described as a male Negro about 6 feet to 6 feet 2, thin, about 160 to 170 pounds and 20 or 21 years of age.

A physician examined Mrs. D. in the emergency room of the Queen of Angels Hospital on November 7. The physician observed that Mrs. D. had a fresh bruise on her right arm and fresh bleeding in the vagina. The physician determined that Mrs. D. had been raped. She could not communicate with Mrs. D. during the examination.

On November 10, 1975, the investigating officer showed Patrick and Solomon some photographs. Both Patrick and Solomon identified a photograph of defendant.

---

[1]Solomon's testimony from the preliminary hearing was read to the jury. At the time of trial he lived in Honolulu; because of a coronary heart disease and prior myocardial infarction he could not travel.

On November 10, defendant was arrested at 2616 West 29th Street in Los Angeles. A 1966 Ford Mustang, license RSR 523, was parked in the driveway. Inside the car, on the front seat, was a baseball bat.

The defense was alibi. Defendant and two friends testified that on November 7 they met at a football game at Alexander Hamilton High School in West Los Angeles, and that after the game at about 5:30 p.m., the three, each driving his own car, went to the Rancho Cheviot Hills Park in West Los Angeles. They arrived at about 6 p.m. and left at about 6:30 or 6:45 p.m. They then drove to the Kit Kat Club on Santa Monica Boulevard. They arrived at the club at about 7:15 p.m. and each had a beer. They played several games of pool. Between 8:30 p.m. and 8:45 p.m., defendant and his friends left and defendant went home arriving home shortly after 9 p.m.

## DISCUSSION

1.  ■ Defendant contends that the photographic identification procedure used was impermissibly suggestive. First, no objection was raised at trial. Second, the contention has no merits. The photo display shows six dark-skinned young male Negroes. Defendant points out that only he was clothed "in a white tank T-shirt." So what? Each picture was unique in some fashion. No one testified that the rapist wore a white T-shirt at the time of the incident. Moreover, Patrick testified that he based his identification on "just the face."

2.  ■ The People introduced three photographs of the victim lying in bed. Defendant contends the photographs should not have been introduced into evidence because they were inflammatory and prejudicial. The contention is without merit. There is nothing inflammatory about the pictures. They only show an obviously very sick woman lying in bed, quite properly covered. To be sure, they tend to support the People's position with respect to the victim's mental state, but detriment to the defense alone does not amount to prejudice.

3.  ■ Defendant contends that the evidence is insufficient to sustain his conviction of rape under Penal Code section 261, subdivision (1)—the only subdivision of section 261 under which defendant was charged—which defines rape as sexual intercourse accomplished where the victim "is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent; . . ."

The evidence is sufficient. Counsel makes a spirited argument pointing to various parts of the record which detract from the identifications of defendant by Patrick and witness Solomon. These points, however, merely go to weight. Further, defendant overlooks the evidence concerning the car and the baseball bat.

The heart of this appeal is whether there was sufficient evidence that the victim was incapable of giving consent "through lunacy or other unsoundness of mind, whether temporary or permanent. . . ." Contrary to defendant's submission, this does not call for any particular type of clinical diagnosis. *People* v. *Griffin* (1897) 117 Cal. 583, 585 [49 P. 711], still states the correct test: "[L]egal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences." The victim's doctor testified that "she could not perceive exactly the nature of the situation in which she was placed. . . In other words, she did not have the understanding what exactly was going on around her." That he was cautious in expressing his opinion with respect to the precise situation in which the rapist had placed her merely reflects the scientific mind—the difference between disorientation in situations which he observed, and disorientation in a situation to which he had to extrapolate. Further, the treating physician's opinion was amply corroborated by the testimony of Patrick and that of the physician who examined the victim after the rape.

Evidence that after the incident the victim stated that she had been raped merely created a conflict. Even if the jury accepted that the victim had made the statement, it could conclude either that the event had shocked the victim into an ex post facto awareness of what had happened, or that she was merely mouthing words without any true understanding of their import. Significantly we do not know precisely what was said in her presence before the words were uttered.

4. Defendant contends that the trial court erred in failing to grant his motion under Penal Code section 1118.1, in connection with the rape count. That contention is answered above.

5. ■ Defendant contends that he was denied effective representation because his trial counsel did not make a motion for a new trial. That contention is without merit. After the jury returned its verdict, trial counsel indicated that he would make a new trial motion. Then on September 17, 1976, the following conversation took place:

"THE COURT: . . . You may present your motion for new trial at this time, . . . [Defense counsel]: Yes, Your Honor. At this time—may I have just one moment? THE COURT: Surely. (Conference between the defendant and his attorney.) [Defense counsel]: Yes, Your Honor. At this time there would be a motion for a new trial. THE COURT: You may state the grounds. [Defense counsel]: . . . The grounds are that—may I have just a moment, Your Honor? THE COURT: Surely. (Conference between the defendant and his attorney.) [Defense counsel]: Your Honor, there will not be a motion for new trial. THE COURT: Even on Count I [rape]& [Defense counsel]: Yes, Your Honor."

A little later during the sentencing proceedings the court said that it was troubled by the rape count because in its view the victim's unsoundness of mind "was not demonstrated. . ." Later it softened this by stating that the "soundness [sic] of mind of the alleged victim certainly did seem in question." It correctly felt, however, that it was powerless to grant a motion for a new trial on the rape count unless defendant moved for it. (See *People* v. *Rothrock* (1936) 8 Cal.2d 21, 24 [63 P.2d 807].)[2]

On this record, defendant was not denied the effective assistance of counsel. First and foremost, counsel did not forget to make a motion for a new trial. Rather he withdrew it after consulting with defendant and ignored an implied invitation to renew it.

Second: while it is defendant's burden to show incompetence of counsel "not as a matter of speculation" (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]) and not for us to speculate on counsel's tactics, it is likely that counsel's refusal to move for a new trial was a well reasoned gambit in a game of chess he was playing with the court.

Hindsight tells us that as the People's case developed, the circumstantial evidence showing a forcible rape was very strong indeed: the victim was 65 years old and physically impaired; the assailant was a stranger, some 40 years younger than she was; under the circumstances—assuming that some physical resistance had to be shown—the barest minimum

---

[2]It apparently escaped the court that if the rape count was shaky, the assault with intent to commit rape count was no better. The jury was never instructed on the elements of forcible rape.

would have sufficed (*People* v. *Newlan* (1959) 173 Cal.App.2d 579, 581-582 [343 P.2d 618]); that there was resistance was readily inferable from the circumstances, particularly the victim's screams and the physical examination which showed bruises and vaginal bleeding. In addition, as already noted, her complaint of having been raped is perhaps more consistent with a forcible rape theory than the one charged.

When the motion for a new trial came on for hearing Mr. and Mrs. D. resided in Australia. She was dying. He had been brought to Los Angeles to testify. The chances were that a successful motion for a new trial would result in an early retrial before which the People would move to amend the information to add a forcible rape theory, with a certain conviction to follow.[3] If, on the other hand, judgment was pronounced, the conviction appealed and the appellate court, a year or so later, agreed that the victim's unsoundness of mind had not been proven, a retrial, while theoretically possible, might never take place.

6. ■ Defendant's final contention is that he was improperly sentenced on all three counts. The Attorney General concedes that defendant should not have been convicted on both counts I and II because count II, assault with intent to commit rape, is a lesser included offense of count I. (*People* v. *Moran* (1973) 33 Cal.App.2d 724, 730 [109 Cal.Rptr. 287].)

■ Finally we note that the minute order of the sentencing is incorrect. It is to the effect that all sentences "are ordered to run CONSECUTIVELY." Nothing in the report of the oral proceedings justifies this entry. The court said: "Sentence of the Court is pronounced as follows: The defendant is sentenced to State Prison for the term provided by law. Said sentence will attach to each and every count of which he has been convicted." This language can, at most, be interpreted to mean that the prohibition against multiple punishment contained in section 654 of the Penal Code did not apply. It is not, however, a sentence to consecutive terms. The court having failed to determine how the terms shall run, they run concurrently. (Pen. Code, § 669.)

---

[3]Similar thoughts must have gone through the court's mind when, in denying defendant's section 1118.1 motion it said: "I shall deny . . . it primarily because I believe that it is to the benefit, curiously enough, of the defense that I deny it." Counsel did not request an explanation.

The judgment is reversed as to count two. It is modified by ordering the word "consecutively" be stricken and the word "concurrently" inserted in lieu thereof.

In all other respects the judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 22, 1978.