[No. G030277. Fourth Dist., Div. Three. June 27, 2003.]

THE PEOPLE, Plaintiff and Appellant, v.
DONALD RAY HILLHOUSE, Defendant and Respondent.

### Counsel

Tony Rackauckas, District Attorney, and Stephan L. Sauer, Deputy District Attorney, for Plaintiff and Appellant.

Irma Castillo, under appointment by the Court of Appeal, for Defendant and Respondent.

### Opinion

**BEDSWORTH, J.**—The People appeal the dismissal of an information filed against Donald Ray Hillhouse. Hillhouse was charged with 10 counts of oral copulation of a person incapable of giving legal consent because of a mental disorder or developmental or physical disability (Pen. Code, § 288a, subd. (g))[1] and 10 counts of sexual penetration by a foreign object of a person incapable of giving consent because of a mental disorder or developmental or physical disability (§ 289, subd. (b)). All of the charges stemmed from Hillhouse's alleged contacts with Brian K., a 14 year old who suffers from a degree of mental impairment. The trial court dismissed the information on the ground that sections 288a, subdivision (g) and 289, subdivision (b) were inapplicable to acts committed against a minor, because minors are incapable of giving legal consent to sexual acts, without regard to any mental impairment. We reverse.

---

[1]All further statutory references are to the Penal Code.

Brian was born in May of 1985. In September of 1999, Garden Grove police interviewed Brian in his parents' home after a report was made alleging he was a victim of sodomy. Brian told the police about a man named "Buck" (later established to be defendant Hillhouse), whom he had met while fishing at a pond in a Garden Grove park.

Brian explained that after he and defendant had fished together on several occasions, defendant asked Brian if he liked girl's butts and if he had a girlfriend. Brian answered "yes" to both questions. The same day, defendant invited Brian to his motor home, which was parked nearby. According to Brian's description, once in the motor home, defendant put his mouth on Brian's penis and moved it until "white stuff came out." Brian said that after that initial visit, he went back to the motor home at least 10 times, and each time sexual acts occurred. Those acts included defendant placing his finger inside Brian's rectum, and placing a cylindrical object in his own rectum in front of Brian. Defendant also had Brian grab defendant's penis and masturbate him until "white stuff came out." Brian repeatedly stated he did not want to see defendant arrested as a result of the conduct.

Sergeant Manuel Flores of the Garden Grove Police Department was the officer who first interviewed Brian about the allegations. He testified the interview lasted approximately 30 to 40 minutes. He did not notice anything unusual or inappropriate about Brian's dress or behavior, and did not have any difficulty understanding Brian's speech, although he noticed some slurring of words. Flores attributed the slurred speech to Brian's "mental [im]maturity," explaining that Brian appeared to have the "mind frame" of "someone much . . . younger." He concluded that Brian communicated at the level of an elementary school student, rather than at the level of a typical 14 year old.

Shortly after the initial interview, Garden Grove Police Officer Charles Loffler took Brian to the park in a patrol car to see if he could identify Buck. Before asking Brian for the identification, Loffler read him a formal advisement setting forth guidelines for making such an identification. It appeared to Loffler that Brian did not understand the formal advisement, and Loffler then "broke it down and used terminology . . . which [Brian] could understand." Loffler drove Brian past the defendant and Brian identified him as Buck. When Loffler asked Brian if he was sure, Brian said "Yes, . . . didn't you see me wave to him?" Loffler stated that his interview with Brian lasted about 15 minutes and he could tell that Brian had some impairment in his mental capacity. He stated that Brian's facial expression "did not seem normal to me," and characterized Brian as "[s]omewhere between slow and strikingly irregular."

In fact, Brian's IQ is under 70. He has been in special education classes since preschool. In February of 2000, his parents applied for Brian to receive services through the Orange County Regional Center on the basis of his mental retardation. According to Mary Parpal, a staff psychologist from the center, Brian functioned at a first grade level overall, but had the math and reading comprehension skills of a third grader and the writing skills of a second grader. Brian could write in a rudimentary manner, and, having graduated from speech and language therapy classes, his speech could be easily understood. Parpal also testified that Brian has irregular facial features, including an unusual facial shape, and closely spaced eyes, which is typical of a person with mental retardation. Brian has an unusually large tongue, which impedes his speech, and a bulbous nose. Brian also has an awkward gait, which Parpal described as "atypical . . . as compared to a normal gangly 14 year old." In Parpal's opinion, Brian looks obviously mentally retarded, although she acknowledged she is "sensitized" concerning what to look for in making such an assessment.

On May 7, 2001, pursuant to section 995, the superior court dismissed the initial information filed against defendant in connection with the charges at issue here. That same day, the People refiled the criminal complaint, charging defendant with 10 counts of oral copulation of a person incapable of giving legal consent because of a developmental disability (§ 288a, subd. (g)), and 10 counts of penetration by a foreign object of a person incapable of giving legal consent because of a developmental disability (§ 289, subd. (b)). Defendant was also charged with five counts of forcible sodomy (§ 286, subd. (c)), but was not charged with any crimes of which Brian's age was an element.

At the preliminary hearing on the allegations of the second criminal complaint, the court heard testimony from Flores, Loffler and Parpal. At the conclusion of the evidence, the People agreed the evidence was insufficient to bind defendant over for trial on the forcible sodomy counts. However, as to the remaining counts, the court expressly rejected defendant's suggestion that the statutes prohibiting sexual contact with persons incapable of giving legal consent applied only to victims so incapacitated as to be unconscious or unable to care for themselves: "I don't agree to that . . . It's only when the condition results in their incapability of consenting." The court also rejected defendant's contention there was insufficient evidence to sustain findings that Brian was incapable of consenting due to a developmental disability, and that defendant should have known of that condition: "I don't have any problem with a reasonable person [i]n the defendant's situation to determine that this victim was at least mentally impaired . . . ." The court

expressly concluded "that the offenses set forth, except for those designated by the district attorney as being dismissed, have been established . . . ."[2]

The People then filed an information charging defendant with 10 counts of oral copulation of a person incapable of giving legal consent because of a developmental disability, and 10 counts of penetration by a foreign object of a person incapable of giving legal consent because of a developmental disability. Defendant filed a motion to dismiss the information pursuant to section 995.

The motion to dismiss was based primarily on the contention that the offenses charged were inapplicable to sexual acts committed upon a minor. He argued that because minors are deemed incapable of legally consenting to sexual acts without regard to mental capacity, it cannot be said they are incapable of giving consent *because of* a developmental disability. Defendant also argued there was insufficient evidence admitted at the preliminary hearing to establish either that Brian was mentally disabled to the extent he was incapable of giving legal consent or that defendant reasonably should have known he was. Finally, defendant contended there was insufficient evidence to establish that he committed each of the charged crimes on 10 occasions.

The court granted the motion to dismiss, agreeing with defendant not only on the statutory interpretation issue, but also as to the sufficiency of the evidence to establish a violation of the charged statutes. The court concluded the evidence was insufficient to establish either that Brian was so incapacitated as to be unable to give legal consent, or that defendant knew or should have known that Brian was so incapacitated. The court did not address the contention the evidence was insufficient to establish that each of the charged offenses was committed on 10 occasions, and the parties do not address that issue on appeal.

I

The trial court's primary reason for dismissing the information was his conclusion the minor's consent was lacking *because* he was a minor not because he had a mental disorder. We disagree.

This is an issue of statutory interpretation, which we consider de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556 [7 Cal.Rptr.2d 531, 828 P.2d

___

[2]As both parties have noted in their briefs, the magistrate made additional comments, somewhat confusingly suggesting he thought the evidence supported charges against defendant based upon Brian's age, including among others, charges under section 288, subdivision (c)(1), which prohibits lewd and lascivious acts upon a person aged 14 or 15 by a person at least 10 years older. However, in light of the magistrate's express statements concerning the specific crimes alleged in the complaint, and the sufficiency of the evidence to support those crimes, the comments are nothing more than surplusage, and neither party contends otherwise.

672].) As explained by the Supreme Court in *Burden*, "[t]he rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. . . . 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning." ' . . . Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature." (*Burden v. Snowden, supra*, 2 Cal.4th at p. 562, citations omitted.)

■ Here, Hillhouse has provided us with legislative history he feels bolsters his contention that sections 288a, subdivision (g) and 289, subdivision (b) were intended only to apply to acts committed against mentally disordered or disabled adults. But we find nothing problematic in the legislative history he has brought to our attention. It is certainly not clear enough to persuade us the Legislature meant something different than they expressed in plain language in the statute. ■ "[T]he most powerful safeguard for the courts' adherence to their constitutional role of construing, rather than writing, statutes is to rely on the statute's plain language." (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 46 [100 Cal.Rptr.2d 627].)[3] Accordingly, "[w]e must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912].)

■ In this case, both provisions refer to acts committed against a "person," and a "victim [who] is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent," but nowhere do they indicate that the person, or victim, must be an adult. Moreover, in each statute, in the provisions where the age of either the victim or the perpetrator was significant, the Legislature did specify it. For example, section 288a, subdivision (c)(1) provides: "Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years."

In that same fashion, the Legislature could have easily specified that the victim under sections 288a, subdivision (g) and 289, subdivision (b) be a "person over the age of 18." We must presume its failure to restrict the definition of the victim in those provisions, when it did so in other provisions of the very same statutes, was intentional. As the Supreme Court

---

[3]"[Some] contend that statutory text, perhaps as read against the general background of enactment, provides a far more reliable indicator of legislative intent than the multifaceted, potentially manipulable, and often unfocused and even contradictory pieces of legislative history." (Eskridge et al., Legislation and Statutory Interpretation (2000) p. 211, fn. omitted.)

explained in refusing to interpret the Fair Employment and Housing Act as implicitly preempting common law remedies: "Had the Legislature intended otherwise, it plainly knew how to do so." (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 75 [276 Cal.Rptr. 130, 801 P.2d 373].)

In any event, even if we were inclined to do so, we perceive no need to interpret the language of these provisions restrictively, because in our view their plain language creates no impermissible overlap or conflict with the statutory provisions governing sexual contact with minors. Both the trial court and Hillhouse have focused on the concept of "legal consent," reasoning that a minor's inability to give legal consent to sexual contact due to age means that the Legislature could not have meant to include them among those who are unable to give legal consent due to mental disability. However, although common parlance (even that indulged in by courts) tends to suggest that minors cannot consent to sexual contact, none of the statutory provisions which specifically govern that contact says any such thing. To the contrary, the concept of consent, whether legal or actual, is actually *irrelevant* to the determination of whether those statutes have been violated.

The statutes, including sections 261.5[4] (unlawful sexual intercourse with a person under age 18), 288[5] (lewd and lascivious acts), 288a, subdivisions (b) and (c)[6] (oral copulation with a minor) and 289, subdivisions (h) through (j)[7] (penetration of a minor by foreign or unknown object) make no reference to

---

[4]Section 261.5, subdivision (a) states: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age."

[5]Section 288, subdivision (a) states: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

[6]Section 288a, subdivisions (a), (b) and (c) state: "(a) Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person. [¶] (b)(1) Except as provided in Section 288, any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year. [¶] (2) Except as provided in Section 288, any person over the age of 21 years who participates in an act of oral copulation with another person who is under 16 years of age is guilty of a felony. [¶] (c)(1) Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] (2) Any person who commits an act of oral copulation when the act is accomplished against the *victim's* will *by means of force*, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[7]Section 289, subdivisions (h) through (j) state: "(h) Except as provided in Section 288, any person who participates in an act of sexual penetration with another person who is under 18

a minor's ability or inability to consent to sexual contact. They merely implement a public policy making the described acts criminal without regard to such consent.

The idea that minors cannot "consent" to sexual relations is consistent with the way our Penal Code treated such conduct prior to 1970. At that time, the act of sexual intercourse with a female under the age of 18 was included within the statutory definition of rape (§ 261), and was commonly referred to as "statutory rape upon a female under the age of consent." (See, e.g., *People v. Scott* (1944) 24 Cal.2d 774, 776 [151 P.2d 517].) Presumably, the concept that a minor female could not consent to sexual intercourse justified statutory treatment of the act in the same manner as other types of nonconsensual sexual intercourse. Many courts have continued to characterize the issue in that context. (See *People v. Brown* (1973) 35 Cal.App.3d 317, 326 [110 Cal.Rptr. 854] ["[b]ecause of her age the minor is incapable of giving consent"].)

However, as our Supreme Court has recently explained, when the Legislature amended the rape statute in 1970 to exclude the act of sexual intercourse with a minor, and then created the separate crime of unlawful sexual intercourse with a minor (§ 261.5), it "implicitly acknowledged that, in some cases at least, a minor may be capable of giving legal consent to sexual relations." (*People v. Tobias* (2001) 25 Cal.4th 327, 333 [106 Cal.Rptr.2d 80, 21 P.3d 758].) The existence of such consent, of course, is the distinction between the crimes. Nonconsensual sexual intercourse with a minor still constitutes rape, and carries a higher penalty.[8]

In contrast to those statutory provisions prohibiting sexual contact with minors, sections 288a, subdivision (g) and 289, subdivision (b) do turn upon the issue of consent, and specifically "legal" consent. The concept of legal consent, although not often discussed in our case law, was explained as long ago as 1897 and repeated in the same terms in 1977: "[L]egal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences." (*People v. Griffin* (1897) 117 Cal. 583, 585 [49 P.

---

years of age shall be punished by imprisonment in the state prison or in the county jail for a period of not more than one year. [¶] (i) Except as provided in Section 288, any person over the age of 21 years who participates in an act of sexual penetration with another person who is under 16 years of age shall be guilty of a felony. [¶] (j) Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years."

[8]Defendant argues in his brief that the Supreme Court stated the opposite in *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 395 [66 Cal.Rptr.2d 210, 940 P.2d 797], i.e., that "an unmarried minor [cannot] legally consent to sexual intercourse." However, that statement was contained in the *dissenting* opinion of Justice Mosk, not in the court's opinion.

711], overruled on other grounds in *People v. Hernandez* (1964) 61 Cal.2d 529, 536 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]; *People v. Lewis* (1977) 75 Cal.App.3d 513, 519 [142 Cal.Rptr. 218].)

Contrary to defendant's contention, we would not assume—nor would we infer a legislative presumption—that the average 14 year old in our current society does not possess the intelligence capable of understanding the nature and consequences of a sexual act. It is teenagers' judgment and impulse control, not his or her knowledge or intelligence, which tend to be problematic. " '[M]inors are treated differently from adults in our laws, which reflects the simple truth derived from communal experience that juveniles as a class have not the level of maturation and responsibility that we presume in adults and consider desirable for full participation in the rights and duties of modern life. [¶] . . . Adolescents "are more vulnerable, more impulsive, and less self-disciplined than adults," and are without the same "capacity to control their conduct and to think in long-range terms." ' " (*American Academy of Pediatrics v. Lungren, supra,* 16 Cal.4th at pp. 395-396 (dis. opn. of Mosk, J.), quoting *Stanford v. Kentucky* (1989) 492 U.S. 361, 395 [109 S.Ct. 2969, 2989, 106 L.Ed.2d 306] (dis. opn. of Brennan, J.).) It is for those reasons that our laws governing sexual contact with minors make it irrelevant, as a general rule, whether the minor consented.

Consequently, we conclude the statutory provisions at issue in this case cover different crimes, and contain different elements, than the provisions governing sexual contact with minors. If the prosecution proves only that the sexual contact occurred with a victim who was under a certain age, but not that he or she was suffering from an impairment that precluded legal consent, the crime falls within the latter statutory definition. However, if the evidence demonstrates the victim was unable to give legal consent due to a disability, and the defendant knew or should have known that, then the crime falls within the statutes protecting mentally disordered or disabled victims, without regard to their age.

Of course, as defendant points out, there is a point at which a minor's tender years might suggest he or she would lack the ability to understand the nature and consequences of sexual conduct even in the absence of any mental disorder or disability. If the disabled victim were in elementary school, we might agree that it would be difficult to determine whether his or her inability to understand was attributable to the disability or simply a function of age. However, the point is moot, because there is no distinction in penalty between a sexual act committed against a child younger than 14 by a person at least 10 years older, and the same act committed against a disabled person. (Cf. § 288a, subds. (c)(1), (g), and § 289, subds. (b), (j).)

The only time the punishment will differ is in the case of sexual contact with a minor age 14 or older. And therein lies the rub for defendant. As he acknowledges, his interpretation of the statutes leads to an anomaly in which the sexual abuse of a mentally disabled 14 year old carries a lesser penalty than the same abuse committed against a mentally disabled adult. In other words, according to that argument, a perpetrator given the option of committing his crime against either a disabled 24 year old or a disabled 14 year old would be well advised to choose the child. Even if the language of the statutes were not so clear, we could not attribute such an intent to the Legislature. (See *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57], explaining that courts must " ' "avoid an interpretation that would lead to absurd consequences." ' ")

Finally, defendant relies upon *People v. White* (1986) 179 Cal.App.3d 193 [224 Cal.Rptr. 467], contending it holds that section 289, subdivision (b) cannot be applied to acts committed against children. But *White* is distinguishable on one very important point: The child victim in that case suffered from no mental disability. The only issue before that court was whether "[a] small child of normal mental development for its age is . . . a person afflicted with 'lunacy or other unsoundness of mind' within the meaning of subdivision (b) . . . ." (*White*, at p. 199.) Thus, the court's conclusion the statute was inapplicable hinged solely upon the determination that ordinary childhood was not "lunacy or other unsoundness of mind." The court had no occasion to consider whether the statute might be applied in the case of a child who suffered from some mental disability in addition to youth. And as Hillhouse acknowledges, "cases are not authority for propositions they did not consider. (*People v. Mazurette* (2001) 24 Cal.4th 789, 797 [102 Cal.Rptr.2d 555, 14 P.3d 227].)"

II

The court's order dismissing the information was also supported by the conclusion that the evidence admitted at the preliminary hearing was insufficient to establish either that Brian was so incapacitated as to be unable to give legal consent, or that defendant knew or should have known that Brian was so incapacitated. Again, we disagree.

In ruling on a motion to dismiss made pursuant to section 995, the superior court sits merely as a reviewing court, without the power to judge credibility, resolve conflicts, weigh evidence, or draw its own factual inferences. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669

P.2d 1278].) Instead, "in proceedings under section 995 it is the magistrate who is the finder of fact; the superior court . . . must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. (*People v. Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664], and cases cited.) On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer." (*People v. Laiwa, supra,* 34 Cal.3d at p. 718.)

 In this case, there was ample evidence to support the magistrate's determination. The undisputed evidence was that Brian functioned at the level of a first or second grader. Even defendant concedes that level of cognitive skills was insufficient to demonstrate capacity for legal consent: "one can presume that a child who only has the cognitive skills of a 5 to 8-year-old boy would lack the capacity to give legal consent." Moreover, Brian's unsophisticated description of defendant's conduct—stating, for example, that defendant put his mouth on Brian's penis "until white stuff came out"—strongly suggests Brian did not comprehend the nature of what had been done to him. That is certainly not the way in which a normal 14-year-old boy would have described the incident. And of course the fact that Brian "waved at" defendant while driving by in a patrol car to identify him for police, indicates that even then Brian did not appreciate the consequences of what had transpired. We would be surprised if defendant waved back.

The evidence was also sufficient to support the conclusion defendant knew or should have known that Brian was mentally disabled and that his disability rendered him incapable of legally consenting to sexual acts. Even if we were to disregard Parpal's "sensitized" opinion that Brian appeared obviously mentally retarded, there is still the evidence that both Officers Flores and Loffler determined, within 30 minutes or less, that Brian did not function at the level of a normal 14-year-old boy. Flores thought he communicated at the level of a child in elementary school, and Loffler actually characterized him as mentally impaired, in the range of "[s]omewhere between slow and strikingly irregular."

Defendant, of course, spent far more time with Brian than did either Flores or Loffler. It is reasonable to infer that the impression they each gleaned within a half-hour would have been apparent to him as well. The evidence was therefore sufficient to support the conclusion that defendant knew or should have known that Brian was mentally impaired and functioned at the level of a young child, and that such an impairment rendered him legally incapable of consenting to sexual acts.

The order dismissing the information is reversed, and the matter is remanded to the superior court for further proceedings.

Sills, P. J., and Fybel, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.