# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B242391 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA052260) |
| v. | |
| EDUARDO SARAVIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Eduardo Saravia appeals his conviction of three counts of committing sexual penetration of a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1, 2 & 5),[1] and one count of committing a lewd act on a child under 14 years of age (§ 288, subd. (a); count 4). He contends the trial court erred solely with respect to count 2 by failing to instruct on sexual battery as a lesser included offense, and failing to instruct on attempted sexual penetration. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

An amended information filed June 9, 2011 charged defendant with three counts of committing oral copulation or penetration with a child 10 years of age or younger in violation of section 288.7, subdivision (b) (counts 1, 2 & 5), and three counts of committing a lewd act on a child under 14 years of age in violation of section 288, subdivision (a) (counts 3, 4 & 6). The information further alleged that defendant had a prior conviction within the meaning of the "Three Strikes" law, section 667, subdivisions (b)–(i) and section 1170.12, subdivisions (a)–(d), and a prior conviction within the meaning of section 667, subdivision (a)(1).

### A. Prosecution Case

G.C. (mother) and defendant had been married for two years, and together for 13 years. Mother and defendant had four children together: The victim, 10 years old at the time of the offenses, an eight-year-old boy and two five-year-old boys. Mother and defendant had separated a month before because defendant was physically abusive.

On March 22, 2011, defendant was living at a friend's house, but had been staying with mother for two days because mother had been ill. At about 1:15 p.m. or 1:30 p.m., mother took one of her sons to the doctor's office. The doctor's office was closed, and mother returned about 1:45 p.m. or 2:00 p.m. When she walked into the house, one of her sons was watching television and mother saw the door to her bedroom was closed. When she walked in, she saw the victim, blindfolded with a blue bandanna that belonged to defendant, facing the wall with her pants and underpants down to her knees.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Defendant was behind the door, with his pants down, wiping his erect penis with a tissue. Mother did not see defendant touching the victim. Mother asked defendant what he was doing, and defendant responded, "I'm sorry but you didn't give me some." Mother began yelling at defendant, but he did not respond. Defendant pulled up his pants, grabbed his keys, and left.

Mother called 9-1-1, but she was too hysterical for the dispatcher to understand her. Mother took the children and put them in her van. She drove to the front of the apartment complex where she saw a male deputy, whom she flagged down.

Mother took the victim to the emergency room.

The victim testified that at the time mother was taking her brother to the doctor, she was at home cleaning her room. Defendant came in and told her to go to his room. She went to defendant's room, where he blindfolded her. Defendant told the victim to pull down her pants, and she did so. Defendant also pulled down his pants. Defendant, who was sitting on the bed, told her to "suck it" and pulled her head down by his penis, and put his penis inside her mouth. The victim heard her brother calling defendant. Defendant left the room, and when he came back, he told her to get on her hands and knees on the bed. She heard defendant walk into the bathroom, and he came back with some lotion that smelled like lavender. Defendant put some lotion on her vagina using his fingers; while he was putting lotion on her, defendant put his finger between the lips of her vagina.[2] After he stopped putting lotion in her, she felt him between her legs and he rubbed her vagina. She heard the door and mother came in. Mother screamed and told defendant that she hated him, defendant said he was sorry, and left.

When the victim was five or six years old, while they were living at her grandmother's house, defendant had told her to go to the bathroom and had put a blindfold on her. He asked her to pick a flavor of ice cream, and she licked the ice cream

---

[2] Count 2 was based on sexual penetration with defendant's finger when he rubbed the victim's vagina with lavender lotion. Counts 1 and 3 related to defendants other conduct on March 22, 2011.

off his penis.[3]  On another occasion, defendant blindfolded her and told her to pull down her pants and told her to "suck it."  Defendant put his penis in her mouth.[4]  They moved to an apartment, and defendant continued to abuse the victim in the same manner.  One time, her blindfold fell off and she saw his penis.[5]  Defendant threatened to kill her family if the victim said anything.

The victim was examined by a nurse who performed a sexual assault examination, and interviewed by another nurse.  The victim told the nurse that defendant had been abusing her since she was about five or six years old.  Testing of the victim indicated that she had an abrasion on her vagina inside the outer lips.  A Wood's (ultraviolet light) lamp showed possible semen on the victim's thigh.

Sheriff's Deputy Laura Bruner, who has specialized training in interviewing children victims of sexual assault, interviewed the victim at the hospital.  The victim stated defendant rubbed lotion on her vagina, and while he was doing so, the tip of his finger went inside the lips of her vagina.  Defendant pulled her pants and underwear down and told her to suck it and he put his penis in her mouth.  The victim was standing and defendant was behind her rubbing his penis between her legs when mother came into the room.  Defendant did not put his finger inside the victim's vagina.  The victim told Deputy Bruner that defendant grabbed her hands and put them on his penis.[6]

Testing of swab samples taken from the victim's buttocks, thigh, neck, vulva, vestibule, and mouth did not detect any sperm, nor was sperm detected with a microscope.  However, there is not always sperm in ejaculate.  Pre-ejaculate does not have sperm cells, but contains the components of semen.  Samples from the victim's

---

[3] This conduct formed the basis for the allegations of count 4.

[4] This conduct formed the basis for the allegations of count 6.

[5] This conduct formed the basis for the allegations of count 5.

[6] At trial, the victim testified she did not tell Deputy Bruner when Deputy Bruner interviewed her at the hospital that defendant grabbed her hands and put them on his penis.

buttocks, thigh, neck, vulva, vestibule, and underwear were positive for the components of semen. In addition, Y-STR[7] analysis showed that defendant was a possible donor of the samples taken from the victim's thigh, vulva, and underwear. Only one out of 567 Hispanic males would generate the same profile.

Defendant sent mother a text message about 3:00 p.m. that said, "'I'm sorry. See you on the other side.'" After that, defendant did not call, text, or return home.

### B. Defense Case

Defendant testified that on March 22, 2011, he was staying with mother and trying to work things out with her. He had being sleeping on the couch in the living room, but slept with mother the night before. One of the bathrooms in the apartment did not work because they had hooked up a washer in it. All of the children showered in the master bedroom. Sometimes the victim would come in and ask to use the shower while defendant and mother were in the bedroom.

The morning of March 22, 2011 when defendant woke up, he wanted to have sex with mother, but she refused. He had not removed his clothes. Defendant had an erection and he got angry and went into the bathroom. He had some "clear stuff" coming out of his penis, but he did not ejaculate. He used a towel to wipe himself off and replaced it on the towel rack. When he returned to the bedroom, mother was getting dressed. It was about 11:00 a.m.

The victim asked if she could take a shower. Defendant told her she could take a shower after she cleaned her room, and he left the bedroom to remind one of his sons to clean his room. When defendant returned to the bedroom, the victim was in the shower. Defendant was sitting at a desk writing some music. The victim opened the door and came out of the bathroom with a towel, holding her dirty clothes. She was naked and wrapped with the same towel defendant had used to wipe himself off. Defendant preferred that the victim change clothes in the bathroom before she came out. The victim was standing near defendant.

---

[7] This is a type of a DNA testing.

5

Defendant heard the front door of the apartment slam, and heard someone open the door to the bedroom, which was already halfway open. When defendant heard the door open, he got up. Mother called defendant "dopey" and asked if had raped the victim. Defendant responded that it was "bullshit" and he felt sorry for mother for what she had said. Defendant grabbed his jacket and wallet and went to get the car keys, and left. Defendant went to see his grandmother in Mexico. Although defendant had moved out of the apartment, most of his personal property was still there. His text message to mother meant that he was sorry he would see her on the other side of the courtroom in children's court in a custody fight.

Defendant and mother were married because she had been born in El Salvador and she was not a citizen of the United States. He and mother tried to smuggle his uncle's grandchild into the United States using the victim's birth certificate. Defendant was not prosecuted but mother's case was pending and she could be subject to deportation.

Defendant denied pulling the victim's pants down, putting his penis in her mouth, having her touch his penis, or inserting his finger into the victim's vagina.

The parties stipulated that when the victim spoke to a sheriff's deputy on March 22, 2011 at the victim's residence that the victim responded "no" when asked whether defendant had put anything in her vagina.

Defendant admitted a prior conviction of attempted robbery in 2000.

### C. Jury Verdict

The jury found defendant guilty on counts 1, 2, 3, and 5, and were deadlocked on counts 4 and 6. The court declared a mistrial on counts 4 and 6. After defendant admitted the prior conviction allegations, the court sentenced him to an aggregate term of 105 years to life consisting of consecutive terms of 35 years to life on counts 1, 2, and 5, doubled as second strikes, plus five years pursuant to section 667, subdivision (a)(1). On count 3, the court imposed a concurrent 21-year term, and dismissed counts 4 and 6.

## DISCUSSION

### I. Instructions on Lesser Included Offenses

An uncharged crime is included in a greater charged offense if either (1) "the greater offense cannot be committed without committing the lesser" (the "elements test"), or (2) the accusatory pleading actually alleges "all of the elements of the lesser offense" (the "accusatory pleading test"). (*People v. Wolcott* (1983) 34 Cal.3d 92, 98.) To determine whether an offense is a lesser included, one of the two tests must be met. (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) In determining whether an offense is a lesser included, the evidence adduced at trial is not considered, because "'[t]o constitute a lesser and necessarily included offense, it must be of such a nature that as a matter of law and considered in the abstract the greater crime cannot be committed without necessarily committing the other offense.'" (*People v. Steele* (2000) 83 Cal.App.4th 212, 217–218, italics omitted.)

The duty to instruct on a lesser included offense arises where evidence raises a question as to whether all of the elements of the charged offense were present, but to invoke the duty there must be substantial evidence supporting the defendant's guilt of only the lesser included offense. (*People v. Birks* (1998) 19 Cal.4th 108, 118; *People v. Barton* (1995) 12 Cal.4th 186, 194–195.) The rule embodies the principle that the prosecution has no legitimate interest in obtaining a conviction for a greater offense than is supported by the facts, nor does the defendant have a right to acquittal when evidence supports a lesser included offense. (*Barton*, at p. 195; *Birks*, at p. 119 [rule equally burdens defense and prosecution].) However, there is no duty to instruct on lesser related offenses. (*Birks*, at pp. 116, 136.)

We apply a de novo standard of review to the trial court's failure to instruct on an assertedly lesser included offense. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) Error in the failure of a trial court to instruct on a lesser included offense is subject to the *Watson* (*People v. Watson* (1956) 46 Cal.2d 818, 836) standard of review. (*People v. Breverman* (1998) 19 Cal.4th 142, 178.) "Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the

7

omitted instructions adversely to defendant under other properly given instructions." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085–1086.)

### A. Sexual Battery

Defendant argues the trial court erred in failing to instruct on sexual battery (§ 243.4) as a lesser included offense of penetration with a foreign object (§ 288.7) on count 2 because a penetration as defined in section 289 cannot be committed without accomplishing the touching proscribed by section 243.4. He contends the instruction is supported by substantial evidence because the victim spoke with a deputy at her home and stated she did not feel any object (finger or penis) in her vagina. She also told Detective Bruner that defendant grabbed her hands and put them on his penis, but denied at trial that it happened or she told Detective Bruner it did. The omission of this instruction was prejudicial because this evidence at the time closest to the event was that defendant engaged in no more than a sexual battery.

Section 288.7, subdivision (b) provides that "[a]ny person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." Section 289 defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) Sexual battery is defined as "[a]ny person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse . . . ." (§ 243.4, subd. (a).)

Sexual battery, because it can be applied to an adult victim, has as an element the lack of consent, which is an element that is not required for the offense of sexual

8

penetration on a child aged 10 years or younger.  With respect to section 288.7, the statute intends to protect children under the age of 10 from sexual abuse, and thus the child is deemed incapable of providing consent and thus the question of consent is not relevant to the crime.  While some offenses, such as unlawful sexual intercourse, prohibit consensual sexual conduct with minors, crimes committed upon victims incapable of giving consent "do turn upon the issue of consent, and specifically ' legal' consent." (*People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1620.)  Minors are treated differently from adults because they have not reached the level of maturity presumed of adults, they tend to be more vulnerable, and less likely to think in long-range terms.  (*Id*. at p. 1621.) "It is for those reasons that our laws governing sexual contact with minors make it irrelevant, as a general rule, whether the minor consented."  (*Ibid*.)  As a result, crimes against those legally incapable of consenting "contain different elements[ ] than the provisions governing sexual contact with minors."  (*Ibid.*)  Thus, sexual battery is not a "lesser" included offense but contains an additional element such that sexual penetration with a child could be committed where a sexual battery is not.  Accordingly, the trial court did not err in not instructing on sexual battery.[8]

### B.      Attempted Sexual Penetration with a Child

Defendant also contends that for the same reasons the court erred in failing to instruct on sexual battery, the trial court erred in failing to instruct on the lesser included offense of attempted sexual penetration.  We disagree.

An offense is "attempted" when there is "a specific intent to commit the crime, and a direct but ineffectual act [is] done towards its commission."  (§ 21a.)  To justify an attempt instruction, there must have been substantial evidence the defendant intended to

---

[8] In his reply brief, defendant argues that section 289 incorporates the element of consent (see § 289, subd. (a)) and thus any distinction between sexual battery and sexual penetration on a child at to this element is specious.  As discussed above, a child under the age of 10 is deemed incapable of consent to any sexual conduct with an adult.  Thus, whether section 289, subdivision (a) and sexual battery under section 243.4, subdivision (a)—both crimes against adults—contain the element of an unconsented act does not aid our analysis.

commit sexual penetration on his victim but was "unsuccessful in the attempt." (See *People v. Holt* (1997) 15 Cal.4th 619, 674 [rejecting argument that sua sponte attempted rape instruction was required where there was no evidence "that defendant intended to commit rape but was unsuccessful in the attempt"].)

Here, although the evidence supports the instruction, the trial court's failure to instruct on sexual battery was harmless. Given that both the victim and Deputy Bruner explicitly testified at trial that defendant put his finger between the victim's labia, it is not reasonably likely that the jury gave significant weight to the vague stipulated testimony concerning what the victim told the deputy who interviewed her before she went to the hospital.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.


10