Filed 5/13/24  P. v. Daniels CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098356 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE005847) |
| v. | |
| STEVE WAYNE DANIELS, | |
| Defendant and Appellant. | |

A jury found defendant Steve Wayne Daniels guilty of three counts of rape by force or fear along with other crimes.  On appeal, defendant contends the trial court erred by failing to instruct the jury on the lesser included offense of assault with the intent to commit rape as to the second of the three rape counts (count three).  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Given that defendant is seeking reversal of only count three, we focus on the facts relating to that offense.

The victim, defendant's spouse, called 911 twice on April 6, 2022,[1] and reported domestic violence. Sacramento Police Officers David Williams and Crystal Espinoza were dispatched to follow up with the victim. The victim's oral report was recorded on Officer Williams's body-worn camera. The footage was played for the jury during defendant's trial. The footage was not included in the record on appeal; we have only testimony discussing the contents and a copy of the transcript reviewed by the jury.

The interview transcript begins with the victim recounting that around 4:00 a.m. on April 6, defendant returned to the home he shared with the victim, started kicking the door, forced the victim to take a bath, hit her in the head after she got out, knocked her down, threw her on the bed, attempted to have sex with her, smothered her with a pillow, and continued to sexually assault her until about 5:30 a.m. The victim added that defendant had physically and sexually assaulted her from approximately 10:00 p.m. on April 5 through approximately 5:30 a.m. on April 6. The victim reported it took defendant about five hours to get an erection, and "[t]hen he finally did. And then after he got done, he got off [her]," and that during those five hours he was hitting her. There seemed to be brief confusion between the officer and the victim as to whether the five hours referred to defendant's absence from the house or defendant's inability to obtain an erection.

Officer Williams asked the victim to slow down because she was skipping a lot in her report. The victim was visibly injured and upset in the footage. The officer then took the victim step by step through each event she had mentioned, and a clearer, more

---

[1]     Further date references are to the year 2022.

2

detailed timeline emerged. The victim reported that at about 10:00 p.m., defendant punched her, covered her face with a pillow, and began having sex with her for about five minutes until he lost his erection. This sequence of events supports the first rape charge. The victim reported that defendant left at 1:00 a.m. to get some alcohol.

The second rape, count three, is tied to the sexual acts that the victim reported occurred around 2:00 a.m. The victim said that around 2:00 a.m. defendant forced her to touch his penis to help him achieve an erection and then grabbed her legs, placed them on his shoulders, and rubbed his penis against her vagina for about two hours in an attempt to get an erection. The victim was not wearing underwear. The victim twice confirmed defendant was able to insert his penis into her vagina during this timeframe. The victim said defendant did not leave after the second round of sexual intercourse around 2:00 a.m., and that he stayed and acted foolish until he achieved an erection and performed the sexual acts giving rise to the third rape charge around 4:00 a.m.

At trial, the victim changed her story in some material ways, testifying that her husband came home from work, forced her to take a shower, hit her, and had consensual sex with her. The victim testified she and defendant had sex around 12:00 a.m. before defendant went to the store for about 15 minutes. The victim said she and defendant had sex a second time around 2:00 a.m. to 3:00 a.m. She repeatedly testified that the sexual acts were consensual, defendant never raped her, and she and defendant had intercourse only twice. The victim testified that there was a "third incident" around 4:00 a.m., but that defendant did not force himself inside her then. The victim was inconsistent as to how many times defendant had hit her, claiming he hit her between two and six times at various points throughout her testimony.

The victim also testified that she was "coached" by police when she spoke with them during her report on April 6. When asked what she meant by this, the victim said the police did not tell her what to say but pressured her to make pretext calls to her husband and were "coming at [her]." Officer Espinoza testified that she coaches victims

3

on what to say during a pretext call in order to elicit incriminating statements from perpetrators.

Following the close of evidence, the jury was instructed with the pattern criminal jury instruction for rape. (CALCRIM No. 1000.) Thus, the jury was informed that it was required to determine whether defendant had intercourse with the victim without consent by means of " 'force, violence, duress, menace[,] or fear,' " with the understanding that " ' "[s]exual intercourse" means any penetration, no matter how slight, of the vagina or genitalia by the penis.' " (See CALCRIM No. 1000.) The jury was also told that if it did not find defendant guilty of the greater crime of rape, it may find him guilty of the lesser crime of simple battery. The jury was instructed with the pattern jury instruction for the lesser included charge of simple battery. (CALCRIM No. 960.) The jury was also instructed that defendant could only be convicted of either crime if they found him guilty beyond a reasonable doubt.

During its single day of deliberation, the jury had one question for the trial court. The jury asked for clarification on when each of the three charged rapes had allegedly occurred. The court responded that it could not provide any more specific information and reiterated that defendant was charged with three separate counts of rape, one count attributed to April 5, and the other two attributed to April 6. The jury reached a verdict soon after receiving the court's response. The jury found defendant guilty of all charges, including three counts of rape by force or fear, two counts of criminal threats, and one count of inflicting corporal injury upon his wife, the victim. As to the corporal injury count, the jury found true the allegation that defendant inflicted great bodily injury on the victim. The trial court later found true two aggravating factors. The trial court sentenced defendant to an aggregate term of 26 years four months in prison.

Defendant appeals.

4

Defendant contends the trial court erred by not sua sponte instructing the jury with the lesser included offense of assault with intent to commit rape for the rape charge at issue in count three and that he was prejudiced by the error. We conclude the court did not err.

Trial courts must sua sponte instruct the jury on lesser included offenses of the charged offense when " 'there is substantial evidence the defendant is guilty only of the lesser' " offense. (*People v. Chenelle* (2016) 4 Cal.App.5th 1255, 1261; see *People v. Breverman* (1998) 19 Cal.4th 142, 148-149, disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 260 & fn. 7 [narrowing *Breverman*'s rule for cases involving murder and murder-specific defenses].) The parties agree assault with intent to commit rape is a lesser included offense of forcible rape. (Accord, *People v. Lewis* (1977) 75 Cal.App.3d 513, 521; CALCRIM No. 1000.) The parties disagree, however, about whether substantial evidence existed to support a sua sponte instruction on assault with intent to commit rape for the rape charged in count three.

"[T]he ' "substantial evidence requirement is not satisfied by ' "any evidence . . . no matter how weak," ' but rather by evidence from which a reasonable jury could conclude 'that the lesser offense[ alone] was committed].' " ' " (*People v. Wilson* (2021) 11 Cal.5th 259, 297.) " 'Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense.' " (*People v. Thomas* (2023) 14 Cal.5th 327, 385-387 [holding no substantial evidence existed for a self-defense instruction when no actual evidence showed the defendant believed he was in imminent danger].) The standard of review is de novo, and we consider the evidence in the light most favorable to defendant. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 501.)

Defendant contends the trial court erred in failing to sua sponte instruct the jury on assault with intent to commit rape because there was substantial evidence the completed offense of rape, specifically the element of penetration, did not occur for the rape charged

in count three. To support this argument, defendant points to: the victim's description of defendant not having an erection at various times throughout the night, the victim's recantation of her rape allegations at trial, the victim's use of the phrase "sexual assault" instead of the word "rape" during her April 6 report, the victim testifying that she and defendant had sex only twice, and the ambiguity in the victim's April 6 report. We are unpersuaded.

Initially, there was direct, unequivocal evidence that penetration sufficient to establish rape occurred during the timeframe associated with the rape charged in count three. (Evid. Code, § 410 [" '[D]irect evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact"].) Twice on April 6 the victim reported defendant was able to "insert" his penis into her vagina during the sexual encounter around 2:00 a.m. At trial, although the victim recanted her allegations of rape, the recantation went only so far as the element of consent—she never recanted penetration; indeed, the victim twice confirmed in her testimony that intercourse occurred in the 2:00 a.m. to 3:00 a.m. period. These statements amount to direct, unambiguous evidence of penetration not contested at trial.

Defendant suggests the victim's descriptions of his inability to obtain an erection at times throughout the night contradict her claims of penetration. Specifically, defendant argues this demonstrated he was impotent and that his actions thus amounted only to masturbation or "a frustrated attempt at sexual intercourse." Not so. As the jury was instructed," ' "Sexual intercourse" means any penetration, no matter how slight, of the vagina *or genitalia* by the penis.' " (See CALCRIM No. 1000, italics added.) "[N]otwithstanding the term's apparently plain meaning, appellate courts have long held that vaginal penetration does *not* require penetration of the vagina. [Citation.] Rather, '[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in

6

penetrating into the vagina.' " (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1037.)  In other words, "although the term vagina has a well-established anatomical meaning, California courts have long treated it as a term of art synonymous with 'female private parts.' " (*Ibid.*, italics omitted.)

Here, defendant's inability to obtain an erection at various times throughout the night cannot amount to substantial evidence of no penetration given the uncontradicted facts in the record.  No reasonable jury could find that penetration of the external female genitalia did not occur when defendant forced himself between the victim's legs and rubbed his penis against her bare vagina for two hours in an attempt to achieve an erection.  (Accord, *People v. Paz*, *supra*, 10 Cal.App.5th at p. 1037; *People v. Karsai* (1982) 131 Cal.App.3d 224, 233 [penetration of the external female genitalia, including pushing a penis between the labia, is sufficient to establish rape], disapproved on another ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)

Also unpersuasive is defendant's reliance on the victim's use of the phrase "sexual assault" instead of the word "rape" as evidence that penetration did not occur for the rape charged in count three.  The victim described the nature of the sexual assault in such a way that left no doubt as to the meaning of her specific word choice of sexual assault.  Given her explanation, the fact the victim described defendant's conduct as a sexual assault instead of a rape is of no consequence to our analysis.

Nor, as defendant suggests, does the victim's testimony about having sex with defendant only twice provide substantial evidence of no penetration for the rape charged in count three.  This is because the victim twice testified to having sex with defendant between 2:00 a.m. and 3:00 a.m., the timeframe supporting the rape charged in count three.  Indeed, the only sexual activity expressly disavowed by the victim at trial was that which occurred around 4:00 a.m.—the timeframe supporting the *third* rape charge (count four).  Thus, if the victim's testimony about having sex only twice were believed, a reasonable jury could not determine the 2:00 a.m. to 3:00 a.m. period was not one of the

two sexual encounters given the victim's consistency in reporting sex and penetration at that time across her testimony and her April 6 report.

As for ambiguity in the victim's April 6 report, we acknowledge that the report was initially disorganized with arguably contradictory statements; however, unlike defendant implies, the arguable ambiguity did not go to whether penetration occurred. At no point during the April 6 report or the victim's testimony did the victim deny or supply an equivocal answer regarding whether penetration occurred in the 2:00 a.m. to 3:00 a.m. timeframe. The debatable contradictions do not involve the element of penetration—they primarily relate to the timing of the incidents, including when defendant was at the store and when the various sexual encounters occurred, and these ambiguities were clarified once the officer began guiding the visibly upset victim through each event. Indeed, the jury had just one question during deliberation, and it involved only the timing of the separate rape charges, not the element of penetration. After receiving a response from the trial court, the jury reached its verdicts promptly, finding defendant guilty of all charges. Thus, defendant's argument that ambiguity in the victim's April 6 report supplies evidence that penetration did not occur is unpersuasive.

Further, we are not persuaded by defendant's claims that the evidence supporting rape was both highly contested and slight, and that "there was virtually no likelihood that the jury would have accepted simple battery as a sufficient lesser offense of forcible rape." The question before us is not whether the evidence of rape is highly contested, but whether the evidence of penetration is highly contested or slight. In that regard, the element of penetration was not contested. Defense counsel's theory at trial centered only upon the element of consent, not penetration; indeed, in closing argument defense counsel expressly conceded that penetration occurred for the rape charges and stated that it was the other elements of rape that were not proven. (Cf. *People v. Sakarias* (2000) 22 Cal.4th 596, 630 [the element in dispute "was not only shown by overwhelming and undisputed evidence, but was expressly conceded by [the defendant's] attorney in

8

argument to the jury"].) And, as discussed, the evidence supporting completed penetration for the rape charged in count three was not slight.

In conclusion, after a de novo review of the evidence, we conclude the trial court did not err because there was no substantial evidence—individually or cumulatively—in the record " ' "from which a reasonable jury could conclude 'that the lesser offense, but not the greater, was committed' " ' " for the rape charged in count three. (*People v. Wilson*, *supra*, 11 Cal.5th at p. 297, italics omitted.)

DISPOSITION

The judgment is affirmed.

/s/_____<br>ROBIE, Acting P. J.

We concur:

/s/_____
KRAUSE, J.

/s/_____
MESIWALA, J.